## Case No. 16,225.

### UNITED STATES v. SAVAGE.

[5 Mason, 460.] [1]

Circuit Court, D. Massachusetts. May Term, 1830.

REVOLT OF SEAMEN—CONFINEMENT OF MASTER—AUTHORITY OF MASTER OVER MATE.

1. To constitute an endeavour to commit a revolt within the crimes act of 1790, c. 36 [1 Stat. 115], it is necessary that there should be some effort or act to stir up others of the crew to disobedience of the master.

[Cited in U. S. v. Peterson, Case No. 16,037.]

2. To constitute a confinement of the master within the purview of the same act, it is sufficient that there is a personal seizure or restraint of the master, although it may be for the purpose of inflicting personal chastisement upon the master.

[Cited in Lander v. U. S., Case No. 8,039; U. S. v. Huff, 13 Fed. 641.]

3. The master has authority to displace the mate, and all other subordinate officers, during the voyage. If he abuses his authority, he is responsible for the wrong.

[Cited in The Exchange, Case No. 4,594; Setzer v. The Sylvia De Grasse, Id. 12,-676; The Topsy, 44 Fed. 634.]

[1] [Reported by William P. Mason, Esq.]

4. Semble, that the mate is a seaman, within the crimes act of 1790, c. 36, § 12.

[Cited in U. S. v. Huff, 13 Fed. 633.]

Indictment against the defendant [Samuel P. Savage] who was mate of the ship Plato, Charles Knapp master: (1) For confining the said master, and (2) for an endeavour to commit a revolt on board of the ship, against the crimes act of 1790, c. 36, § 12. Plea, not guilty.

C. G. Loring, for defendant, in the course of the trial contended (1) that to constitute a confinement within the act, there must be an intention to confine the master. If the party seize the waster to inflict personal chastisement upon him, and not to confine him, it is a case not provided for by the act. Abb. Shipp. 141, note. (2) That the endeavour to commit a revolt must be established by some proof of an attempt to stir up others to revolt; for which he cited U. S. v. Smith [Case No. 16,337]; U. S. v. Hemmer [Id. 15,345]. (3) That the mate is not a seaman within the provision of the act of 1790, c. 36. 7 Conn. 239. (4) He also argued largely upon the facts, to show, that no case was made out against the defendant.

Mr. Dunlap, for the United States, on the first and second points, cited U. S. v. Bladen [Case No. 14,606]; U. S. v. Smith [Id. 16,345]; U. S. v. Hemmer [supra]. On the third point, he cited Baily v. Grant, 1 Ld. Raym. 632. On the fourth point he argued, that the facts were fully made out for a conviction of the defendant.

STORY, Circuit Justice, after summing up the facts, said:

The point, whether the mate be a seaman within the reach of the statute, will be reserved for further consideration, if the verdict shall be against the defendant upon the other facts. But for the present trial, we hold that the mate is a seaman, and is to be so deemed for all the purposes of the statute.

As to the definition of an endeavour to commit a revolt, it seems unnecessary, after the numerous decisions in this court, to go at large into the subject. The court adhere to the doctrine, that to constitute an endeavour to make a revolt, there must be some effort or act to stir up others of the crew to disobedience of the lawful commands or authority of the master. However reprehensible in other respects the conduct of the party may be, if it has no such aim or object, he is not within the provisions of the statute.

In respect to the confinement of the master, we do not concur in the argument of the defendant's counsel. If the person of the master is in fact seized, or if he is in fact held in personal restraint, (whether for a long or a short time is immaterial,) it is a confinement within the meaning of the statute; and of course it subjects the party to punishment, unless he can establish, that it was done in justifiable self-defence, or for some other legal cause. It matters not, that the seizure or re-

straint was principally or wholly for the purpose of inflicting personal chastisement upon the master; that it was to beat, or to wound him, and not to deprive him of his command or authority on board the ship; or that the confinement was a means of personal punishment, and not an end. The law looks to the act, and not merely to the intent. If the seizure is unlawful, it is a confinement. The law esteems the person of the master sacred, and protects him from all restraint, which is unlawful.

There is another point, which has been suggested by the argument at the bar. How far has the master a right to displace the mate? We are of opinion, that he has this authority absolutely; and the mate is in such a case bound to submit. The master is the lawful agent of the owner for this purpose, and the authority is entrusted to him from motives of great public policy, to secure due subordination on board, and to promote the vital interests of navigation and trade. If the master abuses his authority, or exercises it in a wanton or malicious manner, he is responsible for his conduct. But his authority is conclusive upon all inferior officers. If he displaces the mate, the latter is bound to abstain from all future exercise of his ordinary authority on board of the ship. He is bound to deliver up the log-book, and resign the state-room set apart for the officers. He is not indeed to be treated in a harsh or disgraceful manner. He is to have suitable food and lodging, and conveniences assigned to him by the master. But like every other person on board, he is bound to submit to all reasonable commands, and to conduct himself in a quiet and inoffensive manner. Being no longer in office, he is to be deemed a quasi passenger; and his remedy for any grievance lies by an appeal to the laws of his country for redress, and not by any attempts to avenge his wrongs, or to inflict personal chastisement on the master.

Verdict for the defendant.