## Case No. 9,224.

### The MARY PAULINA.

### MARDER et al. v. BOYNTON et al.

### [1 Spr. 45.] [1]

District Court, D. Massachusetts. Feb., 1843.

SEAMEN—RATIONS—BREAD—EXTRA MEAT—RECEIPT IN FULL—DOUBLE WAGES.

1. The usual standard of a full allowance of bread to a seaman is the navy ration.

2. Five pounds of bread a week, to each man, is a short allowance, within the statute of July 20th, 1790, § 9 [1 Stat. 135].

3. No over abundance of meat can be substituted for the bread required by the statute.
[Cited in Broux v. The Ivy, 62 Fed. 603.]

4. A receipt given by a seaman in full of all demands, will not bar a claim for which he has not received compensation.
[Cited in The Topsy, 44 Fed. 632.]

5. If there be a short allowance within the statute, of any one of the three articles, the seaman is entitled to the double wages.
[Cited in Collins v. Wheeler, Case No. 3,018.]

This was a libel promoted by William Marder and four others of the crew of the brig Mary Paulina, for extra wages, under the statute of July 20th, 1790 (section 9), which provides that "every ship or vessel, belonging as aforesaid, bound on a voyage across the Atlantic Ocean, shall, at the time of leaving the last port from whence she sails, have on

[1] [Reported by F. E. Parker, Esq., assisted by Charles Francis Adams, Jr., Esq., and here reprinted by permission.]

board, well secured under deck, at least sixty gallons of water, one hundred pounds of salted flesh meat, and one hundred pounds of wholesome ship-bread, for every person on board, over and besides such other provisions, stores and live stock as shall by the master or passengers be put on board, and in like proportion for shorter or longer voyages; and in case the crew of any ship or vessel which shall not have been so provided, shall be put upon short allowance in water, flesh or bread, during the voyage, the master or owner of such ship or vessel shall pay to each of the crew one day's wages beyond the wages agreed on, for every day they shall so be put to short allowance." The libel alleges a short allowance of bread for forty days, on a passage from the Atlantic coast of Africa to Boston. It appeared that the vessel sailed from Acra, on the coast of Africa, to Prince's Island, and thence to St. Thomas' Island, (both being on the coast,) and from the latter place to Boston. The passage being fifty-seven days. On the seventeenth day out from St. Thomas, the crew were put upon an allowance of five pounds of bread, per week, to each man. This continued for two weeks, when the allowance was reduced to four and a quarter pounds; and in one week more the ship-bread was exhausted. This continued for two weeks, when they spoke a vessel off the coast of the United States, which supplied them with bread and beans. The allowance was then five pounds a week, until the arrival at Boston. It also appeared that a part of the trading cargo of the vessel was ship-bread, and that the master sold a quantity of it while at Acra.

R. H. & E. T. Dana, for libellants.
Fuller & Andrew, for claimant.

SPRAGUE, District Judge. The first question which has been raised is, whether a voyage from the coast of Africa, near the equator, to Boston, is a voyage "across the Atlantic," within the meaning of the statute, or one requiring a larger supply of bread than the one hundred pounds specified in the statute. In the view I have taken of the case, it becomes unnecessary to decide that point, as I think it clear that this vessel had not even the one hundred pounds. The next question is, whether Acra, or St. Thomas, is to be deemed the "last port of departure;" and I have no doubt that it is St. Thomas. That island is to the eastward of Acra, and more distant from Boston. It was the port of destination when the vessel sailed from Acra, and not one at which she merely touched on her passage home. Was there, then, a short allowance of bread on the voyage from St. Thomas to Boston? The usual standard of a full allowance is the navy ration, which is fourteen ounces a day, or a little over six pounds a week, to each man. During the time specified there was never over five

pounds a week, and sometimes less. This was a short allowance.

It is contended by the claimant that there was an abundance of other provisions, so that the crew had always sufficient. I have doubts whether this would be any defence, if proved. At all events, the burden is on the claimant to show what the other provisions were. This he has not done, and the fact of the master's supplying himself with beans from the vessel he fell in with, indicates that there could not have been an adequate supply of vegetable food. No over-abundance of meat, fresh or salted, can be substituted for the bread required by the statute.

The claimant has produced receipts, given by the libellants, in full of all demands, and introduced evidence to show that it was understood at the time of the settlement of the voyage, that this claim was relinquished. It appears, however, that the libellants, in fact, received nothing but the wages they had actually earned. It is quite time that the owners and masters of vessels understood that a seaman's receipt in full, given only for money actually due him, and with no additional consideration, cannot be used in bar of a suit for damages. This mode of depriving a seaman of his just right has been often attempted, and has been uniformly repelled by the court.

It is contended that the double wages given by the statute is for a deficiency of all the three articles therein named; and that if there be a short allowance of one only, then only one-third of the additional wages can be given. And Coleman v. The Harriet [Case No. 2,982], is cited as an authority. The court there gave only one-third of the additional wages for a short allowance of one of the articles. No reasons are assigned, and the case is a solitary one, I am unable to follow that precedent. The statute is in the disjunctive, and in my opinion does not admit of such a construction, but gives one day's pay for a short allowance of any one of the specified articles.

It is said that bread could not be procured at St. Thomas. If this were proved, it would constitute no defence, since the cargo consisted partly of bread, which was sold at Acra. The master should have retained enough to insure his having the statute quantity when he should leave St. Thomas.

Decree of double wages for each of the libellants for the time alleged in the libel.

In the course of the argument of the above case, Judge Sprague remarked that the rule laid down in Dunl. Adm. Prac. 284, that "when the answer is required by the libellant to be upon oath, it becomes, when responsive to the libel or interrogatory, evidence for the respondent, which must be disproved by the evidence of more than one witness," had never prevailed in admiralty, and had been distinctly disavowed in this district and circuit. Cushman v. Ryan [Case No. 3,515]; Huston v. Jordan [Id. 6,959].

As to short allowance, see Foster v. Sampson [Case No. 4,982]; Collins v. Wheeler [Id. 3,018].

On the construction of the statute, see Mariners v. The Washington [Case No. 9,086]; The Mary [Id. 9,191]; Ferrara v. The Talent [Id. 4,745]; Piehl v. Balchen [Id. 11,137]; The Elizabeth Frith [Id. 4,361]; s. c., The Elizabeth v. Rickers [Id. 4,353].

As to the effect of seamen's receipts, see The Rajah [Case No. 11,538].