## Case No. 5,530.

### GONZALES v. MINOR.

[2 Wall. Jr. 348.] [1]

Circuit Court, E. D. Pennsylvania. Oct. 30, 1852.

INTERNATIONAL COMITY—ADMIRALTY INTERVENTION—COSTS.

1. The exercise of admiralty jurisdiction in suits by foreign seamen for wages, is matter of comity rather than of duty; and generally speaking, is exercised only under such circumstances as might infer the presumption of a request from the foreign state: as, for example, where a voyage is ended or broken up, and the seamen discharged; or where there is strong reason to believe that there would be a failure of remedy, in case the mariners were compelled to await an oportunity of obtaining redress in their own courts.

[Cited in The Becherdass Ambaidass, Case No. 1,203; The Carolina, 14 Fed. 426; The Topsy, 44 Fed. 635.]

[Cited in Roberts v. Knights, 89 Mass. 450.]

2. In a case of "transparent contrivance," proved by an intervenor upon evidence in this court, which was not before the court below, the libel was dismissed with costs to the intervenors and consignees, against the libellants and the contriving defendant, contrary to the rule established in Carrigan v. The Charles Pitman [Case No. 2,444], which does not allow costs on a judgment of reversal in this court, obtained upon new evidence, not had in the court below.

[Appeal from the district court of the United States for the Eastern district of Pennsylvania.]

This was a libel for wages by ten Spanish sailors, mariners of a Spanish schooner, the Vencejo, against Antonio Minor, its master, and Figuera and others, consignees in whole or in part of the cargo or vessel. The libel set forth that the schooner having been at Barcelona, and "destined on a voyage thence by way of Cette to Philadelphia," the said master hired the libellants to serve as mariners "for and during said voyage;" but it stated afterwards, that the vessel having arrived at Philadelphia and delivered her cargo, and made freight, "that the libellants still continue on board and in the service of the said schooner." There was no allegation, therefore, that the voyage was ended. The libel sought process against the respondents, but asked none against the vessel. It claimed wages to the amount of $660; it being sworn that one mariner had shipped at $40 a month, another at $25, and another at $18. No copy of the shipping articles was annexed. The return of the process was "Non est inventus" as to Minor, the master; and an attachment of the credits and effects of the owners of the vessel in the hands of the consignee, to the value of $660. A few days previously to this libel being filed, on the 11th of September, 1851, Messrs. H. & W. P. Hall, of South Carolina, had brought a suit against one Manuel Roger, a foreign attachment, in a state court at Phil-

1[Reported by John William Wallace, Esq.]

adelphia, attaching his estate in the hands of this Minor & Figuera & Co.; and under this process the ship—alleged to be his, in part—was taken possession of by the sheriff, and the freight in the hands of Figuera & Co. claimed, as belonging to him. The answer of the master, Minor, admitted "that all the allegations in the said libel were true:" that Figuera and others were consignees, and had received between $640 and $650, which they declined to pay over, "upon the allegation of some foreign attachment having issued, under which the said schooner had been seized;" and asserted that the respondent had "no funds to pay said demands of libellants, as well as other expenses incident to said attachment;" and that his own wages were also unpaid. And it concluded with the admission and request, "that all and singular the premises are true and within the admiralty and marine jurisdiction of this honourable court, in verification whereof, if denied, the respondent craved leave to refer to the depositions and proofs to be by him exhibited in this cause." Figuera and others, the consignees, stated in their answer, that they had no knowledge of their own respecting the amounts stated in the libel to be due the libellants; that a foreign attachment, of which they annexed a copy, (the attachment by Messrs. H. & W. P. Hall,) had been served on them, in which Roger, the defendant in it, was alleged to be owner, or part owner, of the vessel; and that as consignees of part of the cargo and vessel, they had received of the freight of her last voyage, of which there remained in their hands, $648.18, which they were ready to pay to whomsoever might be entitled to it.

The mariners were represented by John Fallon; the master, Figuera and others, by Christopher Fallon. The libel of the mariners was filed on the 19th of September, 1851. The answer of Minor was prepared and sworn to on the 17th, two days before any application for any process was made. In this state of the pleadings, the Messrs. Hall, already named as the persons by whom the foreign attachment, referred to in the answer of Figuera & Co., had been laid, intervened, setting forth that the allegations of the libel were not the whole truth; praying that the libellants might be obliged to produce the shipping articles, by which, they were informed, it it was contracted that no wages should be paid till the termination of the voyage, which did not terminate at Philadelphia; praying that Minor might be held to proof of his allegations, about having no money; stating that they were informed that the filing of the libel was a contrivance between the libellants, Minor & Figuera & Co., to defeat the attachment of the intervenors, the Messrs. Hall: that Minor was part owner of the schooner, and had received from Figuera & Co. large sums of money, and that he had moneys to defray wages, if due. And praying security from the libel-

lants and respondents for costs; the said libellants having sailed with the said Minor in the Vencejo. This last fact was one which was not denied in any part of the pleadings. The district court dismissed the answer of the intervenors, and decreed in favour of the wages. [Case unreported.] The case being now here on appeal from this decree, Mr. Waln, in behalf of the intervenors, the Messrs. Hall, produced, under objection of Mr. John Fallon, (not sustained by the court,) as to their competency and relevancy, three several letters, dated the 13th and 16th of September, 1851, to the sheriff of Philadelphia county, who had served the process of foreign attachment in the suit of Hall v. Roger, from Messrs. C. and J. Fallon, the respective counsel in this suit of the complainant, the sailors, and the defendant, Minor; but on that suit jointly representing Minor, the defendant, and complaining to the sheriff in his behalf, of the detention of the vessel by that officer, under the foreign attachment in the suit of Hall v. Roger. In one of them, of September 13th, that is to say, six days before this libel was filed, Messrs. "C. and J. Fallon, for Capt. Minor," (the facts stated in the letter being sworn to, as true, by Minor,) write to the sheriff, as follows: "Hall v. Roger, Supreme Court, December Term, 1851.—We are informed by Captain Antonio Minor, that under the writ in the above case, you have attached the schooner Vencejo, and on sending to your office, we were informed by your deputy, that the whole vessel is attached. Capt. Minor is part owner of the schooner, and at the time of the attachment was in possession of her, sailing her as captain, under agreement with the other owners. The right of defendant, if any, is subject therefore to the right of Capt. Minor's possession, and you cannot rightfully dispossess him of it. We are directed, therefore, by Capt. Minor, to notify you that the schooner cannot be rightfully taken out of his possession by you under the above attachment, and you are required forthwith to remove your officer from on board, and permit the vessel to sail, otherwise you will be held liable to damages, costs and expenses of every kind. You will further take notice, that the schooner is now ready to sail with a cargo on board, and that having taken charge and possession of the vessel, you will be held accountable for the cargo on board, and for the loss of freight, as well as for other damages, if the same shall be removed, and you are warned on no account to permit the same to be removed by any person on any pretext whatever." In another letter of the same day, Messrs. C. and J. Fallon write "for Minor:" —"We understand your note to be, that the sheriff don't mean to interfere with the captain's sailing with the vessel referred to. And we have accordingly instructed him to leave with the vessel, holding you responsible for the damages already sustained. If we

have misunderstood you, please say so at once, and instruct the officer you have placed on board."

GRIER, Circuit Justice. The district court decreed in favour of the libellants, on the state of pleadings and proofs, as the case stood before them. But I am of opinion that the bill should have been dismissed, on grounds not taken in the argument of the case in the district court, and for reasons which, if they had been urged in the argument before that court, would have produced a different result. We do not think it worth while to inquire whether the intervenors have taken the proper steps to compel the production of the shipping articles, in order to show whether the mariners contracted for a voyage to Philadelphia and back again to Spain, because we think that no sufficient allegations appear on the face of the pleadings or in the evidence, to justify the interference of the court in favour of the libellants; and moreover, because we are satisfied from facts either admitted or apparent on the record, that the proceedings as between the libellants and master, are collusive, and instituted for the purpose of evading the attachment laid by an American creditor, in a suit against one of the owners of the vessel.

A court of admiralty has jurisdiction in suits for wages, promoted by foreign seamen against foreign vessels, as questions of general maritime law. But the exercise of such jurisdiction is discretionary with the court, and to be permitted or withheld according to circumstances. The express consent of the foreign minister or consul, is not essentially necessary to found such jurisdiction. Nevertheless, the exercise of it, is rather a matter of comity than of duty. Whether it ought ever to be exercised against the remonstrance of the representatives of such foreign nation, we need not inquire; as we cannot foresee all possible cases, and that question is not before us. But when the court does entertain such cases without the request of the representative of the government, they will require the libellants to exhibit such a case of peculiar hardship, injustice or injury, likely to be suffered without such interference, as would raise the presumption of a request, because it is in fact conferring a favour on such foreign state. If the contract with the mariners has been dissolved; if the voyage has been terminated, and there is a dissolution of the relation of the seamen with the ship; or if such dissolution has been caused by some wrongful act of the master; or if a bottomry bond has become due at the end of the voyage, and the remedy might be endangered by delay, in such and like cases as a matter of comity, not of right, courts of admiralty will

10 FED. CAS.—37

interfere to protect the rights of foreigners in our ports. I do not think it necessary to examine specially each of the numerous cases to be found on this subject. They are sufficiently collected in the books. Pritch. Dig. p. 477, tit. "Wages"; Abb. Shipp. Bost. p. 786. It will appear from them that courts of admiralty have expressed extreme unwillingness to interfere in suits for wages, by a foreign mariner against a foreign ship; and have done so only where there was strong reason to believe that there would be a failure of remedy, in case the mariners were compelled to await an opportunity of obtaining redress in their own tribunals. In such cases it may well be presumed that the nation over whose vessels we assume this jurisdiction, will consider it as an act of comity, and not of unwarranted interference.

If, in this case, the voyage had been ended and the mariners discharged by the master, it would undoubtedly have presented a proper case for the interference of our court, to assist them in recovering their wages. But it is averred in the pleadings, and not denied as a fact, that the mariners returned on the home voyage to Spain in the same vessel, in company with the master, who was personally liable, and himself an owner. The mariners have in the vessel an ample security for their wages. Although the libel states, that they shipped on a voyage from Barcelona to Philadelphia, it does not state the voyage ended here, or that they could not, on their return, have ample remedy or redress in their own courts. On the contrary, it is abundantly evident from the face of these records, that this libel has been by agreement and collusion with the master, for the purpose of wresting the money in the hands of the garnishees from the foreign attachment. In order to trump up a bill equal to the balance of freight, charges of $18, $25, and even $40 a month, are set down as mariners' wages. The answer of the captain (admitting every thing alleged in the libel) is drawn out and sworn to before the libel was filed or process was issued. The vessel is rescued from the attachment by the claim of the captain, as part owner in possession, and carried away. The captain, mariners and vessel, have returned together to Spain, after having schemed and executed this transparent contrivance to rescue the freight from the attachment. It would be an excess of comity for an American court to interfere in a case of this kind, in order to enable the master of a foreign vessel to elude the process of our courts in favour of one of our own citizens. The libel is dismissed with costs, adjudged to be paid to the intervenors and consignees by the libellants and Antonio Minor, the master, jointly and severally. Decree reversed.