## Case No. 258.

### The ALONZO.

### [3 Ware, 318.][1]

### District Court, D. Maine. July, 1865.[2]

SEAMEN—WAGES—INCAPACITY—LEAVING VESSEL.

1. The master has a right to disrate a seaman for incapacity, and in proper cases he will be justified in doing it.
[Cited in The Topsy, 44 Fed. 634.]

2. But the seaman does not forfeit, necessarily, all claim for wages, but if he continues

[1][Reported by Edward H. Daveis, Esq.]
[2][Affirmed by circuit court in Bush v. The Alonzo, Case No. 2,223.]

in the ship and is put to other duties, he shall be paid reasonable wages.

[See Wheatley v. Hotchkiss, Case No. 17,483; The Blohm, Id. 1,556; Knee v. American Steamship Co., Id. 7,877.]

3. A seaman is justified in leaving a vessel for just fears for his personal safety.

[In admiralty. Libel by William Bush against the schooner Alonzo, (Thomas Hagget, claimant,) for wages. Decree for libelant. This cause was afterwards taken to the circuit court by the claimant, and the judgment was affirmed, under title of Bush v. The Alonzo, Case No. 2,223.]

G. F. Talbot, for libelant.
J. H. Drummond, for respondent.

WARE, District Judge. The schooner Alonzo, of about 295 tons burthen, sailed from Cardiff, in Wales, in the early part of December, 1864, with a crew of ten men all told, that is, a master, two mates, a steward and cook, and six men before the mast, for Nassau in the West Indies (to any port in the West Indies), or any port of America, and to his final port of discharge in any part of the British Provinces in North America, the whole term not to exceed twelve months. Bush sailed in her as cook and steward at four pounds per month, wages, and joined the vessel on the 7th of December. On her passage out to the West Indies, the vessel had an unusually rough time. There was a constant succession of heavy winds, amounting often to gales and squalls. This kept the sea exceedingly rough, and the vessel being of small size, she of course partook of the motion of the water and was continually tossed in every direction, keeping everything on board in constant agitation, and sometimes shipping water to an inconvenient extent. Her sails were some of them rent and her hull strained so that she leaked considerably, and she was at this time short of provision, so that on the 5th of February, being then near Havana, and that port more accessible, she bore away for it and finally succeeded in reaching it in safety. After she had discharged her cargo and repaired damage, she went to Tampico, back to the West Indies, and finally to Portland, where Bush left the vessel, and now sues for his wages. On the 7th of January, about one month after she left Cardiff, Bush was disrated from the office of cook and steward for which he shipped, put out of the galley, and another person appointed in his place, and it appears from the master's account, that at Havana he applied to the British consul, at that port, to dismiss him from the ship; but was informed that he must carry him on the voyage and not dismiss him but within the British provinces. During the whole voyage to Havana, after he was disrated, to Tampico, back to the West Indies and to Portland, where he finally left the vessel, Bush did, and was required to do, duty as a common seaman on board the vessel. He did not ship as a seaman and did not pretend to understand the duty of a seaman. Personally he was under size, weak, partially deformed, and incapable of the hard duties of a seaman. Accordingly he was put to various service. Sometimes he did duty as a seaman, sometimes worked in the galley and performed such service as he was put to, nor was there any complaint made that he did not usually do willingly what he was ordered to.

On the arrival of the vessel near Portland, he was told by the master that he must run away. The master, by his own account, was told by the British consul, that he could not legally discharge him but in the British provinces. And this information was accompanied by threats of personal ill usage, even to that of taking his life if he continued in the vessel. This was done when two of the seamen were near enough to hear him, and their testimony fully confirms Bush's statement, and Bush solemnly declares that he was afraid to remain from an apprehension of what the master might do. Taking this order, with the threats with which it was accompanied, and the master's severity during the voyage, for he had been particularly severe to this man, and, on one occasion, was punished for a slight fault or, according to Bush, for none at all, with such severity that he did not get over it for two or three weeks; with his habitual strictness, and great strength compared with the feebleness of Bush, it cannot be said that his fears were altogether groundless. The master says that this order to abandon the vessel was revoked, but he admits that it was given, and adds that he offered to pay his passage to St. John. Admitting it to be so, this would not diminish the fears of Bush, and the master well knew that, by deserting the ship, Bush would forfeit all claim to wages during the voyage. Under all the circumstances, I think Bush had just cause for leaving the vessel and demanding his wages at this place. For one month, when he served as cook, I shall allow him, at the contract price, four pounds and for the residue of the time when he served as a seaman at three pounds. The master has an undoubted power of disrating a seaman. Every man engages for his own ability to do the duties for which he contracts. The master of the vessel is necessarily the judge of his competency in the first instance, but he decides, subject to have his decision reviewed by the proper authorities on shore. The master, without doubt, was dissatisfied with the cooking; at the same time it is true, according to all the proof, that while Bush was cook the weather was extremely tempestuous. The vessel being small had

much motion, and the cook had hardly a fair opportunity of doing his business satisfactorily. But, allowing him to be disrated reasonably, there is no reason that he should not be paid for the actual service he performed in the ship during the residue of the. voyage, while he remained in the vessel. Decree for libelant accordingly.