# THE TOPSY.

## KELLY et al. v. THE TOPSY.

*(District Court, D. South Carolina.  December 29, 1890.)*

1. SEAMEN—THE CONTRACT—FORFEITURE.
   Where a vessel is bound on a two-years' voyage, touching at many ports, a provision in the shipping articles that any seaman who terminates his contract before the end of the voyage shall only receive one dollar per month as wages is reasonable.

2. SAME—WAGES—RELEASE.
   Where a seaman who has shipped for such voyage and signed said articles voluntarily terminates his contract and releases the vessel on receipt of his wages at the rate of one dollar per month, and there is no evidence of duress or ignorance of his rights, the release will not be set aside at his suit.

3. SAME—QUANTUM MERUIT.
   Where a sailor whose name does not appear on the shipping articles, and who says that he shipped without signing them, performs his duty properly until the vessel reaches a port, when he leaves her, he is entitled to recover on a *quantum meruit* for the time he served, where there is no positive evidence that he signed the articles.

4. SAME—REASONABLE DISPUTE.
   Where such seaman's right to wages is denied under a belief that he had signed the shipping articles under another name, and had violated their terms, he is not entitled to wages from the time he left the ship up to the date of payment, since such matters constitute a reasonable ground for dispute.

5. SAME—DISRATING.
   Where no prejudice or manifest error is shown, the decision of the master of a vessel disrating a sailor from an able-bodied seaman to an ordinary seaman will be accepted by the court in a libel for wages.

6. ADMIRALTY—PRACTICE—INFANTS.
   An admiralty court will allow a minor to recover in his own name wages earned in sea service, when the contract on which he sues was made personally with him, and it does not appear that he has any parent or guardian or tutor entitled to receive his earnings.  Following *The David Faust*, 1 Ben. 184.

7. SAME—JURISDICTION.
   Where the subject of a foreign nation libels a vessel belonging to such nation for wages in a United States court, and the vessel, pending the suit, leaves port without any certain destination, and the libelant has left the vessel, the court will not, at the request of the consul of the said nation, refuse to take jurisdiction of the suit.

In Admiralty.  Libel by seamen for wages.

*C. B. Northrop*, for libelants.

*I. N. Mathews*, for claimant.

SIMONTON, J.  The libelants were a part of the crew of the British bark Topsy.  The shipping articles, dated 12th August, 1889, state her voyage in these words:

"From Montreal and Quebec to Toulon, France, for a series of voyages for a term, but not exceeding two years, at master's option, to port or places within, but not beyond, 70° north, and 70° south, latitude; trading to and fro, as required by master and owners.  Final port of discharge in the United Kingdom or dominion of Canada, at master's option.  Crew to have privilege of terminating this contract previous to expiry of engagement, on giving reasonable notice to master; they accepting one dollar per month as compensation for their services."

One of the libelants, George Mellor, an English subject, and a minor, shipped at Quebec; the others shipped at Marseilles. Each case is attended by its peculiar circumstances. They will be discussed separately.

*Charles Kelly.* Kelly is a citizen of the United States, an able-bodied seaman, with 26 years' experience, apparently of unusual intelligence. He signed the shipping articles before the British consul at Marseilles, 10th March, 1890. He says that he never read them nor heard them .read. He does not say that he did not know their purport. The British vice-consul certifies that Kelly was engaged with his sanction, and that he signed the agreement, fully understanding the same; Kelly remained with the bark until she reached this port by way of Cardinas and Matansas. When he reached Charleston, he asked the master for his discharge. No reason is assigned for this request. When he asked the discharge, and once or twice afterwards, he demanded pay at his rate of wages, $18 per month, for five months and a week, less advances, $29. The master consented to give the discharge, but refused the demand for wages. Kelly afterwards went before the British consul at this port, got his discharge, and, in the presence of the consul, signed a full release of the vessel. Nothing appears to have been said to the consul about his claim or demand for wages. There is no evidence whatever of duress or persuasion, or collusion, or inducement, or dissatisfaction with Kelly on the part of the master, or of any ignorance of his right on the part of the seaman. A release of this kind can always be inquired into, and is not a bar to the seaman, preventing inquiry into his rights, (*The Mary Paulina,* 1 Spr. 45; *The David Pratt,* 1 Wall. 510;) but it is *prima facie* good, (Id.,) and cannot be set aside unless obtained by fraud, mistake, or ignorance of the seaman, (*Thompson* v. *Faussatt,* Pet. C. C. 182; *The Ship Neptune,* 1 Pet. Adm. 180.) Nor was the condition imposed by the shipping articles unreasonable. The vessel was bound on a long voyage, possibly two years. She was to trade from port to port, within a belt of 140 degrees of latitude. Numerous temptations would be offered the crew to leave the vessel. This provision protected her. If the master used it so as to work injustice to the seamen,—if, for instance, he maltreated them, furnished improper food, tyrannized over them, because they must either remain with him or accept the reduced pay,—he could be prevented by the court. This does not appear here. This is not a case in which the doctrine *nudum pactum* can be applied. The sailor was not paid a part of his wages for a full release. In order to entitle himself to his wages, Kelly was bound to fulfill his contract. He was free to rescind his contract on one condition,—to content himself with one dollar a month. He gave the required notice, and got his discharge before the consul. In consideration of this discharge, he released the ship. A seaman will be protected when he needs protection. This man needs it not. Let the libel be dismissed as to him.

*John Cordovil Montiero.* This case is not free from embarrassment. The libelant's name does not appear on the shipping articles. He says that he shipped at Marseilles without signing any articles; that he is an

experienced sailor, and has in other instances signed articles; that he went on board the Topsy with a shipping agent, and got his advance. He remained on her, doing his work to the satisfaction of every one, until he reached this port. Here he left the vessel, the master not consenting to his discharge. He contends that, as he signed no articles, he could leave when he pleased. He sues on a *quantum meruit*. The master, on the other hand, thinks—is not sure—that he saw libelant signing the articles before the vice-consul. His theory is that he went on board, either personating some seaman who had signed, or that he is A. Ramatta, whose name is on the articles. There is no doubt that he was aboard—one of the crew—an able-bodied seaman; that he did his work well, and earned his wages. The defense seeks to forfeit these for desertion. The burden of proof is on the respondent. Macl. Shipp. 221. He must establish the contract and its breach. The testimony of respondent does not meet and overcome the burden of proof. It does not appear that Ramatta and libelant are the same person. Ramatta signs, by his mark, A. Ramatta. Libelant, in the course of his examination, was called upon to write his name. He did so in a good hand of an experienced penman. It is true that, when asked his name by the seamen, he said, "It is too long for you to pronounce; call me 'Antone;'" but there is nothing but the letter A. to create the relief that "A. Ramatta" meant "Antone Ramatta." So, also, there is no legal evidence to support the theory that he went aboard personating some one else. There is plausibility in the theory, and strong suspicion behind it, but no proof. I must allow him his wages. All other able-bodied seamen but Kelly shipped at Marseilles at $15 per month. Let him take a decree for $53.15; that is to say, for wages for four months and eighteen days, less his advances. His counsel earnestly contends for payment of his wages up to this decree, and also that provision be made for his passage money. But under 17 & 18 Vict. c. 104, § 187, quoted in Macl. Shipp. 227, the wages do not run and become payable until the final settlement, if the delay be due to any reasonable dispute as to liability. Such reasonable dispute exists here. Again, as the libelant of his own volition left the service of the bark, upon the ground that he was under no contract, he cannot claim on a *quantum meruit* for services not rendered, nor demand passage money. See *Boulton* v. *Moore*, 14 Fed. Rep. 925. When this case had progressed so far that the testimony was about to be closed, the British consul at this port addressed a letter to the court, asking that it refuse jurisdiction, and remit the case to the proper authorities of the government to which the vessel belongs. Montiero is not a subject of Great Britain; has no domicile in any country subject to that crown. The vessel has left this port, having stipulated with him. Her return is uncertain and improbable. If she were discharged from this case, there would probably be a failure of justice, not from want of motive, but of power in the consul. For these reasons, I retain jurisdiction. *Bernhard* v. *Creene*, 3 Sawy. 236; *Patch* v. *Marshall*, 1 Curt. 452.

*Frank Healy.* Libelant is an infant, from Minnesota. He shipped at Marseilles as an able-bodied seaman, signing shipping articles before the British consul. He was disrated to an ordinary seaman by the master, and reduced from $15 to $12 per month. When he reached this port, he claimed his discharge because of his minority, (*The Hotspur*, 3 Sawy. 194,) and was allowed it, was discharged before the consul, and signed the release. The master has deposited in the registry of this court a sum of money, being his wages for the time of his service, at the rate of $12 per month. Libelant claims $15. This is the only question in the case. The master of a vessel is necessarily the judge, in the first instance, of the competency of a seaman, and he can disrate him. *The Alonzo*, 3 Ware, 318; *The Exchange*, Blatchf. & H. 367; *U. S.* v. *Savage*, 5 Mason, 460. His judgment will be sustained unless proof be made of some prejudice or injustice towards the seaman, or manifest error on the part of the master. There is no evidence whatever of Healy's previous experience as a seaman. It appears in another case now pending that he had made one voyage across the Atlantic in an American man of war. Kelly says that he was worth $15 per month for his age, but does not say of him, as he does say of Montiero, that he was an able-bodied seaman, or entitled to rate as such. I accept the decision of the master. Some doubt was entertained as to the form of decree in his favor. He is an infant. Can he receive the money? On this point Judge BLATCHFORD's ruling is conclusive: "Admiralty courts allow a minor to recover in his own name wages earned in sea service when the contract on which he sues was made personally with him, and it does not appear that he has any parent or guardian or tutor entitled to recover his earnings." *The David Faust*, 1 Ben. 184. As the minor has elected to rescind the contract of the shipping articles, and discharge himself, he can only recover on the *quantum meruit* for actual services. As the master has admitted that he should have wages at the rate of $12 per month, no inquiry will be made respecting any injury to the vessel by reason of the rescission of the contract. *The Hotspur*, 3 Sawy. 197. Let libelant receive the money in the registry.

*George Mellor.* Libelant is a minor. He shipped at Quebec, signing the articles, stating his age. He was engaged as cabin-boy, and served in that capacity until the bark reached Marseilles. The cook having left the vessel at that port, he was put in the galley, and so remained until she reached this port. On her arrival here he left the vessel without leave of the master, and is entered on the articles as a deserter. He sues for wages as cabin-boy to Marseilles, and thence as cook. The wages as cabin-boy were $10 a month. The former cook, an able-bodied seaman, and experienced, got $30 per month. Mellor is not a trained cook, but picked his knowledge up at sea. He was supervised by the mate, and aided by a boy hired for the purpose. During the hearing of this case, and after both the bark and the libelant had left this port, the British consul by letter requested the court to refuse jurisdiction, and to remit libelant to the proper authorities of his own coun-

try. The counsel for the libelant, in an argument characterized by research and ability, contends that the court cannot do this, and must entertain jurisdiction; that, under the constitution, it was established for the purpose, and was clothed with full authority to take cognizance of "all cases of admiralty and maritime jurisdiction;" that the claim for wages is a case of maritime jurisdiction; "that all persons in time of peace have the right to resort to the tribunals of the nation where they happen to be for the protection of their rights, [Ben. Adm. § 282; *The Hotspur*, 3 Sawy. 196;] and that the court could not, consistently with its duty, refuse to exercise a power which the constitution and law had clothed it, when its aid was invoked by a party entitled to demand it as a matter of right," (TANEY, C. J., in *The St. Lawrence*, 1 Black, 526.) There can be no doubt that this case is within the jurisdiction of the court. *The Belgenland*, 114 U. S. 364, 5 Sup. Ct. Rep. 860. The objection goes to its right to exercise discretion in taking or refusing jurisdiction. The conclusion which I have reached renders it unnecessary to discuss this interesting, and, as far as I can see, novel, question. The uniform current of decisions in the courts of the United States is that courts of admiralty can, and, except in special circumstances, will, forbear to exercise the jurisdiction in suits for wages by seamen serving under a foreign flag against a foreign vessel. Judge BEE in this court, in *The Ship Nanny*, Bee, 225; *The Carolina*, 14 Fed. Rep. 424; *The Pacific*, Blatchf. & H. 187; *The Napolean*, Olcott, 208; *Gonzales* v. *Minor*, 2 Wall. Jr. 348; *Willendson* v. *The Forsoket*, 1 Pet. Adm. 197. The English courts claim that this discretion always has existed in the admiralty, and that it is not taken away by Act 24 Vict. c. 10, § 10, giving to the court jurisdiction over any claim by a seaman of any ship for wages. *The Nina*, L. R. 2 Adm. & Ecc. 44. The general subject is exhaustively treated by Mr. Justice BRADLEY in *The Belgenland*, 114 U. S. 365, 5 Sup. Ct. Rep. 860, and the existence of this discretion in the court in every suit by a foreigner against a foreigner is fully recognized and maintained. He draws a distinction between the cases which may bear on this subject. Where the controversy between the foreigners is *communis juris*, —that is, where it arises under the common law of nations,—special grounds should appear to induce the court to refuse jurisdiction. Page 365, 114 U. S., 5 Sup. Ct. Rep. 864, 865. But when the controversy is upon a mariner's contract, which is a creation of the particular institutions of the country, to be applied and construed and explained by its own particular rules, (see WILLIAM SCOTT in *The Two Friends*, 1 C. Rob. 271,) special circumstances must exist to induce the court to take jurisdiction, (Id.) This discretion necessarily flows from the character of the court of admiralty. In every case it seeks complete justice. When, therefore, upon examination it appears that the construction and enforcement of the laws of a foreign state are involved in a question arising between parties owning allegiance to, and contracting with reference to, such laws, and that the tribunals of their own country are open and accessible to them, the court withholds its

hand, remitting the parties to their own courts, in which their own laws are better understood, and the means of enforcing them possibly more complete. And this is specially observed in the matter of seamen's wages, the contract of which is local in its character, and is made the subject of special. legislation in all maritime countries. But when the circumstances of the case are such as demand immediate investigation, or when the seaman discharged from the ship would be put at disadvantage were she suffered to depart, or when she has departed he would be compelled to search the world for her, the court will proceed and decide the case against the wish, and, at times, against the protest, of the foreign consul. *The Russia*, 3 Ben. 476; *The Lilian M. Viguss*, 10 Ben. 388.

The bark has departed this port with no intention of returning to it. Her future course is uncertain. Her trading ground covers 140 degrees of latitude. The libelant has left her, and has himself gone elsewhere. The only means of enforcing a decision in the case is the stipulation filed in the clerk's office. If no decision is made here, libelant would either be without remedy, or without the means or ability, or perhaps the opportunity, of enforcing it. For these reasons the court cannot comply with the request of the consul. *The Hermine*, 3 Sawy. 85; *The Hotspur*, Id. 197, 198. Libelant is a minor. He is not bound by the articles. He can avoid them at any stage of the voyage. The contract is supposed to have been made on that basis. As he has avoided the contract, he can only recover on a *quantum meruit*. A deduction will be made for any injury to the owners arising from the sudden determination of the service. DEADY, J., in *The Hotspur, supra;* 1 Pars. Cont. 263n, (2d Ed.) His wages as cabin-boy may well be ascertained from the shipping articles; his wages as cook must be on a *quantum meruit*. *The Frank S. Hall*, 38 Fed. Rep. 258. He cannot be entitled to the same wages as cook which his predecessor received. Let it be referred to Mr. Seabrook to inquire what he should receive according to these principles.