## Case No. 17,569.

WHITEMAN et al. v. The NEPTUNE.

[1 Pet. Adm. 180.] [1]

District Court, D. Pennsylvania. 1806.

SEAMEN'S WAGES — FORFEITURE AND WAIVER THEREOF — DEDUCTIONS—RECEIPTS IN FULL—FRAUD AND DECEPTION.

1. If forfeitures are incurred and the services of the seamen again accepted. not under a new contract. but under the old one. the forfeiture is thereby remitted and the faults are forgiven.

2. Deductions from wages may be made for voluntary and unfaithful absence from duty, even where the seamen are again accepted on their return to duty.

[Cited in brief in Hart v. The Otis, Case No. 6,154.]

3. Receipts in full by seamen will always be disregarded, when they have been hurried into unjust compliances by fraud, deception. threats, or other improper conduct. palpably imposing on, deceiving, overawing or misleading them. But discharges given with due deliberation and full explanation of circumstances, should not be set aside on light grounds.

[Cited in The Topsy, 44 Fed. 632.]

BY THE COURT. The Neptune on her return from St. Domingo for Philadelphia, put into Charleston, South Carolina, in distress. She lay there, fitting and repairing, two months and a few days. The crew, as it was alleged, and appeared by an entry in the log-book, absented themselves for more than forty-eight hours, without leave, and thereby forfeited their wages. But a short time before the vessel's sailing, and after a long absence from duty, in consequence whereof other hands had been employed in the ship's duty and outfit, they were again received on board. It did not appear, though it might have been otherwise, that any terms were made, as conditions of reinstatement under their old contract—nor were the transactions at Charleston minutely investigated. On their arrival at Philadelphia, the seamen claimed full wages; and the owner refused to pay them for the time they had intermitted their services at Charleston, under an idea that they had forfeited their wages to the time of the arrival of the ship there, by desertion. But the owner offered them the alternative, of payment of the whole for the voyage, with the deduction for the time of absence at Charleston, or that they should institute a suit in the district court, and he would abide by the decision of that court as conclusive. The mariners took time to consider of the proposition, and after several days agreed to it. They were paid their wages. with the deduction mentioned by the owner: and each gave a receipt in full for the balance. The clerk who paid them ex-

[1] [Reported by Richard Peters, Jr., Esq.]

plained to each of them the mode of adjusting the account, and they received, and gave a discharge for the sums severally stated to be due, as the full balance, and without objection; on the contrary they generally acknowledged they had· misbehaved themselves at Charleston. Notwithstanding this discharge, thus deliberately executed, the seamen now claim the wages deducted, and allege, that they had misapprehended their rights, and that the receipt was given under a mistake, as they supposed .they had forfeited their wages when in fact they had not; and if the forfeiture had been incurred at Charleston, it was done away by their being received on board again. without terms, and under the old articles. The receipt, it was said, did not bar their recovery; and decisions of this court were cited to shew that discharges thus given, were only prima facie evidence of payment. If fraud or mistake could be shewn, the whole demand was open for investigation. Several cases were cited, to shew the latitude allowed for such enquiries. 1 Pow. Cont. 144, and two cases in P. Wms.

The general principles stated have been rules of decision, in the court, for many years. But every cause must be governed by circumstances peculiar to itself, where these are strong enough to warrant an exception. I abide by the general principles so frequently tested and established, seeing no reason or authority to alter them. If forfeitures are incurred, and the services of the seaman again unconditionally accepted, and not under a new, but the old. contract, forfeitures are done away, and faults forgiven. But I have always permitted deductions for voluntary absence from duty; and have allowed charges, if they exceeded these deductions, and were inevitable, to be made for hiring others to perform the services the absent mariners were bound to render. It would be unreasonable that the mariner should gain, and the ship lose. pecuniary advantages, by his voluntary and unfaithful conduct in the abandonment of his duty. When a mariner, under certain circumstances, is withdrawn, by a force he cannot resist, from the performance of his duty, the law continues his right to wages. He must balance this benefit by just compensation and amends. when his services cease by his own conduct, and voluntary dereliction of the duty his contract compels him to fulfill.

The question in this cause is reduced to the point of alleged mistake; on which it is endeavoured to repel the bar produced by the receipt in full. Where seamen have been hurried into unjust compliances. by fraud, deception, threats or other improper conduct, palpably imposing, deceiving, overawing, or misleading them. I have disregarded receipts for full payment. But discharges given with due deliberation. and full explanation of circumstances, should not be set aside on light grounds. There will be no end to controversy, if due care is not taken on this subject. It would be highly improper to coun-

tenance such laveering (to use a sea phrase) as seems to have been practised in this case. If openness and simplicity be characteristic of some, low cunning is not less conspicuous in other sailors. The complainants had a full opportunity of considering and knowing their own rights, and of taking advice. They had the choice of accepting the offer, or proceeding at law, with an assurance of submission to the first decision; and by such submission avoiding the delay and expense of an appeal, which to a sailor, eager to receive, and lamentably prone rapidly to spend, his wages, is tantamount to a denial.

Appeals are, too frequently, only productive to rapacious dealers, who buy for trifles, procrastinated claims. It is notorious in this court, that appeals (always desirable to me in doubtful or difficult causes) are too often entered, or threatened, in plain cases, by a defeated, and of course, discontented, party; who, viewing only his own side of the question, easily persuades himself that he is in the right, to force seamen into compliances with litigated deductions. Yet, in the present case, where avowedly no appeal was contemplated, the seamen could not be induced to risk a legal enquiry, which seems now to have been an after-thought; or, if intended, artfully concealed, to obtain from the merchant, as much as he would pay. Parties and counsel in suits know well, that legal proceedings are attended with no small expense, and not a little uncertainty. The consideration of avoiding litigation, and that under a consciousness of misconduct, weighed with the seamen, against their loss by deduction, from the whole of their claim. Most suitors experience the importance of such considerations, even where no sense of improper behaviour exists. I do not therefore see the mistake, said to be made by these mariners, in the light stated by their counsel. I am more certain of the mistake they have gone into, by entering into a controversy, which on both sides appears to have been relinquished. After professing to have acted under misapprehension, it is not to be tolerated in the mariners, that they should take advantage of the misapprehension of the merchant, who paid them, under the idea of putting an end to a dispute, in which he is finally involved. The transactions at Charleston are not in proof; but if the whole subject was before me, and any thing should appear due from the seamen; it is not probable they can refund any sum overpaid. It is not proper that the merchant should be placed, by a deceptious accommodation on the part of the mariners, in a situation to incur the risk. I dismiss the claim with costs.

NOTE. In the 6th section of the mariner's act. the mode of proceeding in cases of seamen's wages, is pointed out. The judge of the district, or, if he resides more than three miles from the place, any judge or justice may proceed in a summary way, and determine a controversy so far as to certify or not, as the case may be, cause for issuing admiralty process. If cause is certified, the suit proceeds in the district court: if not, it precludes farther investigation, and places the party defeated in a situation not to admit of a course to bring the point before a superior tribunal. in the form he wishes. These preliminary enquiries are only where a procedure in rem is contemplated; and are not frequently final. They change into a proceeding in personam too often, as the seaman has several remedies. It is then a perplexing continuance of controversy, when parties are embittered and litigious. It is not pleasant for a judge to review his own decision, though the cause may in form be different. Prejudices may, unperceived by one, of the best inclinations, steal into the mind, and pride of opinion may have an influence felt, without being directly known. Parties do not generally submit to the first opinion of either judges or justices, most seldom to those of the latter, of whom there are not many sufficiently acquainted with maritime laws, to have a proper view of the subject. This as often continues as closes litigation. Causes are brought into court, after these prefatory enquiries, either to appeal, which may now be done in demands for fifty dollars, a sum injuriously too small, to compel compromise, or under a hope of producing an opposite decision. It is at least multiplying chances: which will, at times, operate in suits, as well as in other transactions among mankind. There are some cases "rari nantes in gurgite vasto," where new evidence, or farther investigation, very properly changes opinion. In the case in question, the cause is now in court.