THE PENNSYLVANIA.

(District Court, N. D. California.  December 28, 1899.)

No. 11,913.

SEAMEN—SUIT FOR WAGES—EFFECT OF STATUTORY RELEASE.

A release signed and attested as required by Rev. St. § 4552, without fraud or coercion, by seamen, on payment to them of wages conceded to be due them for a voyage, is conclusive upon them as a settlement of all claims on account of such wages, and the fact that they greatly needed the money paid them does not amount to legal duress or coercion; nor is the release rendered invalid because the master was not then present, but, after signing it on his part, had gone on another voyage.

In Admiralty.  Suit by seamen for wages.

H. W. Hutton and W. G. Holmes, for libelants.
E. S. Pillsbury and H. D. Pillsbury, for respondent.

DE HAVEN, District Judge.  This is an action by certain members of the crew of the steamship Pennsylvania against her owner to recover wages as seamen from May 1, 1899, to July 30, 1899. One of the libelants also demands the further sum of $53.17, balance for wages alleged to be due him for services rendered on the steamer prior to May 1, 1899. The libelants signed articles at San Francisco on November 1, 1898, for a voyage described as follows:

"From the port of San Francisco, California, to Manila, P. I.; thence to such other ports and places in any part of the world as the master may direct, and

return to a port of discharge on the Pacific Coast. Voyage not to exceed six calendar months."

The Pennsylvania upon the voyage named was engaged as a government transport, and arrived at Manila May 2, 1899, at which time the libelants asked to be paid off and returned to the port of San Francisco. The request was refused, and their demand for a discharge was by the United States consul at that port brought to the attention of Maj. Gen. Otis, in command of the United States forces and military governor at Manila. Gen. Otis thereupon, in a letter addressed to the consul, informed that officer that the Pennsylvania was held by the United States under the emergency of war, and would be dispatched to San Francisco as soon as she could be coaled for the voyage, and that the crew must depart with her. He also added:

"Such refractory members of the crew as shall not abide by their instructions will be taken from the vessel and shipped under guard by another transport to the United States. They will not be discharged in Manila, nor will they be permitted liberty of action in the city, but will be held in close confinement before departure. You will make these instructions known."

This order was communicated by the United States consul to the libelants and other members of the crew, but the libelants refused to discharge any further duties as seamen, and on May 6, 1899, were arrested and taken from the ship by order of Gen. Otis. The Pennsylvania thereafter proceeded on her return voyage to San Francisco, leaving the libelants in Manila, where they remained until July 1, 1899, at which time they took their departure on a United States transport vessel, and arrived in San Francisco, on July 30, 1899. On the following day they went before the United States shipping commissioner, and were paid all that the master of the Pennsylvania conceded was due them. They insisted at the time that they were entitled to more, but accepted the amount tendered, and signed a mutual release which had been previously, on June 15, 1899, executed by the master in the presence of the shipping commissioner. This release conformed in all respects to the requirements of section 4552 of the Revised Statutes, and was signed and attested by the shipping commissioner as provided in that section.

The claim is made in behalf of the libelants that they were entitled to their discharge at the expiration of the six months for which they shipped (that is, upon May 1, 1899); that Gen. Otis had no authority to extend their term of service; that their detention in Manila under the circumstances above stated was wrongful; that the master of the Pennsylvania participated in such wrong; and that, under the settled rule relating to the rights of seamen under shipping articles such as were signed by them, they are entitled now to recover from the owner of the Pennsylvania wages up to the time of their return to San Francisco. I do not deem it necessary to express any opinion as to what would have been the rights of libelants if they had not signed the release above referred to. This release was not executed by them under circumstances of fraud or coercion. On the contrary, the libelants accepted the money tendered them, and signed the release freely and voluntarily, with full knowledge of its

contents. The effect of a release signed and attested as this was, in the manner required by section 4552 of the Revised Statutes, is thus declared by that section:

"Such release, so signed and attested, shall operate as a mutual discharge and settlement of all demands for wages between the parties thereto, on account of wages, in respect of the past voyage or engagement." This provision of the statute was under consideration in the case of Rosenberg v. Doe, 146 Mass. 191, 15 N. E. 510, and in speaking of it the court there said, "We are of the opinion that the statute means to make the release conclusive, if it is executed and attested as required, without fraud or coercion." The fact that the libelants were in great need of the money paid to them is not sufficient to show that such release was signed by them under legal duress or coercion; nor is its effect invalidated by the fact that the master of the Pennsylvania was not in this state, nor in the presence of the shipping commissioner, at the time it was signed by the libelants. It had been previously signed by the master in the presence of the shipping commissioner, and when subsequently signed by the libelants its execution was complete, and it then became binding upon all the parties thereto. The libel will be dismissed. The defendant to recover costs.