### RIEGEL v. HIGGINS et al.

(District Court, N. D. California, First Division. May 9, 1917.)

No. 16083.

1. MASTER AND SERVANT ☞351—WORKMEN'S COMPENSATION ACT—ELECTION OF REMEDY.

Where, without any agreement or determination by any state tribunal, an injured seaman was paid and accepted the proper amount under the California Workmen's Compensation Act (St. 1913, p. 279, as amended by St. 1915, p. 1079) for the few weeks for which he was able to produce a physician's disability certificate, but was paid nothing for the temporary partial disability following the period for which he was paid, though his inability to perform work to which he was accustomed endured much longer, there was no such election to take compensation under the statute as precluded the recovery of damages in admiralty.

2. MASTER AND SERVANT ☞385(1)—PERSONAL INJURIES—EVIDENCE.

In a suit in admiralty by an injured seaman, who had received the amount of compensation prescribed by the California Workmen's Compensation Act for a few weeks, evidence *held* to show that his inability to perform the work to which he was accustomed endured much longer.

3. MASTER AND SERVANT ☞382—WORKMEN'S COMPENSATION ACT—RELEASE— SEAMAN.

An injured seaman, receiving compensation prescribed by the California Workmen's Compensation Act for a few weeks without agreement or determination, was not precluded from suing in admiralty by a provision in a receipt signed by him that he thereby released the steamer and its owners from all further liability, where he supposed he was only signing a receipt for the money then received, had no intention of releasing the

---

ship or its owners, and immediately insisted on something more being done about his injuries, especially as releases by seamen are never conclusive, except when made knowingly and intentionally and with a full understanding of the situation.

4. MASTER AND SERVANT ⊂⟩361—WORKMEN'S COMPENSATION ACT—EFFECT ON OTHER REMEDIES.

The California Workmen's Compensation Act cannot and does not deprive an injured seaman of his right of action in the admiralty court for damages for injuries caused by the negligence of the shipowner in providing defective appliances.

5. MASTER AND SERVANT ⊂⟩351—WORKMEN'S COMPENSATION ACT—ELECTION OF REMEDY.

In view of the provision of the California Workmen's Compensation Act that compensation pursuant thereto shall be the exclusive remedy against the employer for injury, if an injured seaman subjects himself to the state tribunals, and claims and receives the amount awarded under the act, or if by agreement fairly entered into the amount to be paid under the act is fixed, and he accepts it with full knowledge of the extent of his injuries, he cannot later maintain an action in admiralty for the same injuries.

In Admiralty. Libel by W. C. F. Riegel against Charles H. Higgins and others. Judgment for libelant.

F. R. Wall, of San Francisco, Cal., for libelant.

Ira A. Campbell and McCutchen, Olney & Willard, all of San Francisco, Cal., for respondents.

DOOLING, District Judge. On May 23, 1916, libelant, a seaman, was injured by a blow on the head on board the steam schooner Coaster, because of a defective appliance used in loading lumber thereon. The injury was received at Prescott, Or. Libelant shipped on board said schooner at San Francisco for a voyage to Portland, thence to San Pedro, and thence back to San Francisco. On the arrival of the vessel at San Francisco, he went to the Marine Hospital, where he was treated for some weeks. During this period and in the early part of June he went to the owners' office and saw Capt. Higgins, the port captain, and asked what he was going to do, because he (libelant) had got hurt on one of his vessels. Capt. Higgins sent him to the insurance office. He went there, and told the insurance people that he was hurt, and that Capt. Higgins had sent him there to see them, and asked, "What are you going to do about me?" He was told to get a certificate from the marine doctor and come up there and get his compensation money. He got the certificate and returned, and was paid by the insurance company the sum of $12.65. This was June 19th. Before the money was given him he signed a receipt in the following terms:

"Received from M. Thompson & Co., twelve 65/100 dollars, being compensation for injury received on steamer Coaster on May 23, 1916; said compensation being for one week, from June 12, 1916, to June 18, 1916, both inclusive."

He returned to the insurance company's office on June 26th and received $12.65 for the week ending June 25th, and gave a receipt in the same form as the above. On July 3d he received $12.65 for the week

⊂⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ending July 2d, and on July 10th he again received $12.65, and gave a receipt in the identical form with the above, with the added words:

"And in consideration thereof, I hereby release the steamer Coaster and owners from all further liability for said injury."

When receiving these various payments he was told:

"This is what you get under the compensation law."

When he signed the final receipt and release, he says that he did not know there was any difference between it and the receipts that he had previously signed; that he did not read them over. After the last payment, however, they told him that that was all, and that he did not have to come back any more. He then went immediately to see Capt. Higgins again, and asked of him:

"What are you going to do with my case? I am not properly fixed, and I have got to have something done to my head, so I will be the same as before; you have got to give me something for the time I was ashore."

Capt. Higgins said:

"Well, I couldn't do nothing for you; I got my men insured; it is not in my power."

And he sent him back to the insurance company, where he was again told that he was finished in that office, and that they had nothing to do with him any more. At no time was he told that he was getting any pay for the sufferings he had endured, but he was several times told, to use his own words:

"They just told me I got my compensation, what I was supposed to get by the law."

There is no claim that any fraud was practiced on him, nor any proof that he did not know what was meant by "compensation money," or by "this is what you get under the compensation law." The compensation law referred to is the California Workmen's Compensation Act, which provides for a comprehensive scheme for the compensation of employés injured in the course of their employment, without regard to any question of negligence on the part of the employer. The amount of such compensation is a certain percentage of the average weekly earnings of the employé, to be paid during the period of disability. The amount received by libelant was correctly estimated for the period covered by the payments in accordance with the provisions of this act, and payments were stopped when he could no longer furnish a certificate of disability from the doctor. The act in question provides that:

"Liability for the compensation provided by this act, in lieu of any other liability whatsoever to any person, shall, without regard to negligence, exist against an employer for any personal injury sustained by his employés arising out of and in the course of the employment. * * * Where such conditions of compensation exist, the right to recover such compensation pursuant to the provisions of this Act, shall be the exclusive remedy against the employer for the injury." St. 1913, p. 283, § 12, as amended by St. 1915, p. 1081, § 2.

The defense to this action is twofold: (1) That libelant, having accepted compensation under the California statute, cannot now claim damages for the same injury in the admiralty court. (2) That for a

fair consideration, and without any fraud practiced upon him, he has released respondents from all further liability.

[1-3] The question of the applicability of the Workmen's Compensation Acts of the various states to seamen injured through the negligence of their employers is one that has not yet been definitely settled. The Supreme Court of California has held that the act under consideration does apply to seamen, so that libelant, so far as the California tribunals are concerned, had the undoubted right to claim and receive the compensation for which the act provides. It is to be noted, however, that he himself did not make his selection of remedies. He called on Capt. Higgins and asked "what they were going to do for him," and was by the captain sent to the insurance brokers, who applied to his case the provisions of the California law. He did not go into any California tribunal and there have his rights determined, but they were determined for him by the insurance brokers. There being no proof to the contrary, he must be presumed to have known the provisions of the law under which he was receiving the various payments; and if the payments do represent the full measure of respondents' liability under that law, I do not think libelant, after exhausting his claim for compensation, in the face of the statutory declaration that "the right to recover compensation under the provisions of this act shall be the exclusive remedy against the employer for the injury," could be permitted thereafter to claim damages for the same injury. But as above stated the amount of compensation to which he was entitled was never fixed by any tribunal, and never by any agreement between the parties. So long as they paid him, he accepted the payment; when they ceased to pay him he immediately claimed:

"I am not properly fixed, and I have to have something done to my head, so I will be the same as before."

The evidence shows that he shipped on the steamer Helaine on July 19th and was compelled to leave her on August 2d because he could not stand the work; that when he bent down his head ached and he got dizzy and his nose started to bleed. He then shipped on the Willamette on August 20th, and made one trip on her, and was compelled to leave her for the same reason. He remained ashore about a month, was again treated by the doctor, and then shipped on board the Vanguard, where he worked for about six weeks. He then remained on shore for five or six weeks, because of pains in the head, and then shipped on the Alcatraz, which he was compelled to leave because, as he testified:

"I had headaches; I could not stand hard work; it affected me too much."

At the time of the trial on March 12, 1917, he testified:

"I get headaches sometimes if I bend over; if I talk much, like now, I get a headache. I have got a headache right now; funny feelings in my head you know, kind of humming in there; sometimes in the evening I get a pain like somebody shooting a knife right across my right eye."

I think it is fairly evident that libelant did not receive the full amount of compensation to which he was entitled, even under the California act, when he accepted the four payments of $12.65, amounting in all to $50.60, even if we add thereto the amount, $15.25, paid by the

owners to his doctors. The act provides that, if the accident causes temporary total disability, the injured employé shall receive 65 per cent. of his average weekly earnings during the period of such disability, and, if the accident causes temporary partial disability, 65 per cent. of the weekly loss in wages during the period of such disability. He has received only 65 per cent. of his earnings for a period of four weeks, although his inability to perform the work to which he was accustomed has endured much longer. My conclusion on this branch of the case is that libelant is not precluded from prosecuting this action by reason of his having accepted the compensation paid him, because he did not receive all the compensation to which he was entitled, and because the amount to be received by him was neither fixed by any tribunal nor by agreement, but solely by the insurance brokers. Nor is he precluded by the acquittance which he signed at the time of the last payment, because he supposed he was only signing a receipt for the money then received, and had no intention of releasing the ship or its owners from further liability. The best evidence of this is the fact that he immediately again went to the owners from the office of the insurance brokers, upon being told that he need not come there again, and made complaint that he was not yet well, was not yet "properly fixed," and asked, "What are you going to do with my case?" Releases by seamen are never conclusive, except when made knowingly and intentionally, and with a full understanding of the situation.

[4, 5] Respondents, and very properly, urge upon the consideration of the court the uncertainties and injustices to which shipowners may be subjected if they are compelled to answer in the admiralty court after having paid to an injured employé the compensation provided for by the Workmen's Compensation Act. I am of the opinion, however, that this act cannot and does not deprive the seaman of his right of action in the admiralty court for damages for injuries caused by the negligence of the shipowner in providing defective appliances. But if the injured seaman shall, as he may, subject himself to the state tribunals, and claim and receive the amount awarded under the act, or if by agreement, fairly entered into, the amount to be paid under the act is fixed, and he accepts it with full knowledge of the extent of his injuries, he should not later be permitted to maintain an action for the same injuries. But where, as here, the amount has been fixed by the employer, and not by any tribunal or agreement, and is not adequate, the seaman may pursue his remedy in the admiralty, and, if successful, the amount already received by him will be credited upon the amount of the judgment entered.

In the present case the libelant for his injuries will be awarded the sum of $1,200, and for wages the sum of $9.16, making a total of $1,-209.16, together with costs of suit. Upon this amount will be credited the sum of $50.60 already received, and judgment will be entered for the sum of $1,158.56 and costs.