## THE ADONIS.
### No. 4242.

Circuit Court of Appeals, Third Circuit. Feb. 19, 1930.

Ward C. Henry, and Mortimer W. H. Cox, both of Philadelphia, Pa., for appellant.

Louis Wagner, of Philadelphia, Pa., for appellee.

Before WOOLLEY and DAVIS, Circuit Judges, and JOHNSON, District Judge.

WOOLLEY, Circuit Judge.

Joseph Bouchie, a seaman aboard the steam barge Adonis was injured when, in the performance of his duty, he fell over a known obstacle on the deck. After he had received some treatment furnished by the Maryland Casualty Company, insurer of barge and owner against liability for such injuries, Bouchie filed a libel against the barge for expenses of maintenance and cure (care), and for damages based on negligence. The court dismissed the libel, and this appeal followed.

Questions whether the respondent was negligent and the libellant entitled to damages, and whether, having been injured in the service of the ship, he is, wholly without the ingredient of negligence, entitled to expenses for maintenance and cure, Saunders v. Luckenbach Co. (D. C.) 262 F. 845; The Osceola, 189 U. S. 158, 23 S. Ct. 483, 47 L. Ed. 760, all disappear from the case if the release which the libellant gave the Casualty Company on behalf of the insured barge and her owner, and offered in defense of the action, is valid.

The libellant attacks the validity of the release because of duress under which he signed it, of fraud practiced by the Casualty Company in changing its terms, and of mistake in signing it, calling our attention to his position as a mariner and therefore a ward of the court of admiralty, whose rights are tenderly guarded, and whose acts, when waiving or yielding his rights, are carefully scrutinized. He invokes the rule stated in Riegel v. Higgins (D. C.) 241 F. 718, 722, and elaborated in The Henry S. Grove (D. C.) 22 F.(2d) 444, 446:

" 'Releases by seamen are never conclusive, except when made knowingly and intentionally, and with a full understanding of the situation.' This being true, the doubt should be resolved in favor of the libelant. A court should be slow to hold that a release becomes operative as to a matter of liability of which the releasing party may have been in ignorance, and which, in fairly interpreting the document, was not in contemplation of the parties when it was made. Tug Ross Coddington, 40 F.(2d) ——, 1924 A. M. C. 615."

The facts and contentions concerning the release are these:

■ The libellant badly needed $125 with which to procure a new set of teeth. The Casualty Company offered him $75. After several sharp conferences the company surrendered and paid him $125, receiving in return the release which the libellant now says he was, because of pain he was suffering, and his need of money, forced to sign. However pain and need of money may have induced him to sign what otherwise is a valid release, these moving considerations, which emanated within himself, not from the Casualty Company, do not amount, as he contends, to legal duress and undue influence. The Pennsylvania (D. C.) 98 F. 744; The Topsy (D. C.) 44 F. 631.

■ The release, evidently a short form regularly used by the Casualty Company, is partly printed, with blanks for the names of parties to meet every case, and partly in typewriting to meet the instant case. The libellant says that the paper he signed contained no typewriting, but, following the printed matter, there was a blank space. This, in effect, is a charge that the paper was altered by additions after it was signed. The printing—the usual legal form—is a release and discharge of the owner from all liability arising from "all actions, causes of action, claims and demands for" loss or injury "sustained * * * in consequence of"—then follows in typewriting the date, place and character of the accident and injury in suit. There is nothing in the typewritten part of the instrument that adds to or varies the sense or legal effect of the printed part, which is an unequivocal release and discharge. We are discussing this matter at some length because of our regard, or responsibility, for seamen. We realize that a release of this kind is not a bar preventing inquiry into the seaman's rights. It can always be looked into. The Topsy (D. C.) 44 F. 631; The David Pratt, 1 Ware, 510, Fed. Cas. No. 3597. But a release of this kind, formally signed, sealed, and witnessed, is, however, prima facie good, and cannot be set aside unless it was obtained by duress, mistake, or, in this case, by fraud, in that the instrument admitted in evidence is not in all respects the instrument the seaman signed. Thompson v. Faussat, Pet. C. C. 182, Fed. Cas. No. 13954; The Ship Neptune, 1 Pet. Adm. 180, Fed. Cas. No. 17569. [4] On the meager evidence of an altered instrument, we are constrained to hold against the seaman on the issue of fraud. This judgment is supported by his act of accepting, and receiving the money on, the check which passed in the transaction on whose face it appears that the money represented by the check was "in full settlement of all liability settlement in the case of Joseph Bouchie v. S. C. Loveland, Inc. (owner of the barge), on account of injury sustained December 1, 1926," which is the injury on the date stated in the typewriting of the release.

■ The libellant realizing that to put the release out of the case he must sustain the burden of proving that he signed it through duress, fraud, or mistake, says, finally, that he signed it through mistake in that he did not read it, and "thought it was a receipt for the $125 (he) was getting." There is no evidence that the libellant could not read. There is evidence that he looked at the paper. He signed it. He is therefore pre-

sumed to have known and understood its contents. The Henry S. Grove (D. C.) 22 F.(2d) 444. Had he read it, he could not have been misled into believing it was anything short of a release. There is no evidence that the Casualty Company did anything to induce him to sign the paper other than tender him a check for the amount agreed upon, or said anything to make him believe it was a mere receipt. Indeed, the record is bare of a suggestion that the libellant was tricked into signing the paper by false representations of the company's agent. The Annie L. Mulford (D. C.) 107 F. 525; The Belvedere (D. C.) 100 F. 498. After a careful consideration of the testimony, we are constrained to hold that there is far too little to have justified the trial court, or to justify this court, on trial de novo, in declaring the paper invalid because of duress, fraud, or mistake.

As the release constitutes a complete defense to the action, the decree dismissing the libel is affirmed.