## Case No. 7,277.
### JENKS et al. v. COX.
[Holmes, 92.] [1]
Circuit Court, D. Massachusetts. Jan., 1872.

T. K. Lothrop, for appellants.
George Marston, for appellee.

SHEPLEY, Circuit Judge. The libellant claims for a balance due to him for his one seventy-eighth part or lay in the proceeds of a whaling voyage in the bark Covington, of which the respondents were owners. The libellant was discharged at Honolulu in November, 1863, after having served faithfully as mariner and boat-steerer from the commencement of the whaling voyage in November, 1860, to the time of his discharge. The settlement was made before the consul at Honolulu; and the libellant was paid at consular rates, according to the price of oil then current in Honolulu, with a deduction of two and one-half per cent commission to the consul.

The question raised by the pleadings is, whether the libellant, under the circumstances of the case, is bound by the settlement at Honolulu, at prices and rates assumed by the consul there, or whether he is entitled to a settlement of the voyage at the home port, and at home prices. It is agreed in the case, that, if he is entitled to recover, he is to recover the sum of four hundred and seventy-eight dollars and fifty cents wages, being the amount of the judgment in the district court, and interest thereon to be added, that being the difference between the sum actually received by him on the settlement before the consul, and the amount he would have been entitled to receive upon an order upon the owners for his lay of the oil, taken

[1] [Reported by Jabez S. Holmes, Esq., and here reprinted by permission.]

at the time of his discharge, at the home prices.

In whaling voyages, the shipping-articles usually contain a clause, providing, that if any officer or seaman shall be prevented by sickness or death from performing the entire voyage, he shall be entitled to such part of the whole amount of his stipulated share as the time of his services on board shall be of the whole term of the voyage.

It has also been the usage and uniform practice, where seamen serve but part of the voyage, to ascertain the time they did serve from the shipping-papers or other proper documents, and to settle with them in the same manner as is expressed by the shipping-papers in relation to persons leaving the ship in consequence of sickness or death, unless there should exist a special contract or written agreement to the contrary.

Courts of admiralty have adopted the rule provided in the articles for cases of separation by death or sickness, by analogy, and as in itself just and reasonable, as the rule to be applied in other cases of separation from the vessel. But if there are circumstances showing that the pro rata settlement would not be just and reasonable, or if any other mode was fairly agreed upon at the time the man left the vessel, the pro rata settlement would not be adopted, the object of the court being to carry out the intention of the parties which they have not expressed. Hathaway v. Jones [Case No. 6,212]. It is not important to consider the testimony in the record in relation to the cause for which the seaman desired his discharge. It is immaterial whether he asked for it, as he claims, upon a well-grounded distrust of the seaworthiness of the vessel, or whether, as the respondents aver, he applied to the master to be relieved from his contract for the performance of the voyage, and to be discharged from the vessel solely because of his roving and restless disposition. In answer to an interrogatory as to the circumstances of his discharge, the master, whose testimony was taken in behalf of the respondents, answers, "He was discharged at his own request, by mutual consent." The master testifies in substance that, after advising the seaman to remain in the ship, and still finding him persistent in his desire to leave, he told him to come to the United States consul's office two days after that, and he would settle with him. The consent to the discharge was absolute and unconditional, and it was necessary that the discharge itself should be made before the consul.

Courts of admiralty will carefully scrutinize a settlement made with a seaman under such circumstances. Where each party acts freely, and the terms upon which the contract of service shall be dissolved are mutually agreed upon, each party understanding the state of the voyage at the time, and contracting for a given amount,—taking

into consideration the pecuniary terms proposed, and the probabilities of the future,—the seaman will be held to abide the settlement thus made, however disadvantageous it may prove. on final settlement of the voyage, to have been to him.

The discharge by consent gave the libellant a right to his lay pro rata of the oil taken. The difference between the computations of the consul and the amount due the libellant upon a settlement at home is so great, that the libellant ought not to be deprived of that to which he was justly entitled. without positive proof that he has relinquished his claim by a settlement which was just and fair, made with a full understanding of the matter, and without any duress.

The libellant testifies that he went ashore on the day of discharge, and told the master for the second time that he wished an order on the owners. "He refused to give it to me. We then went to the American consul's, and I was discharged there; and, while being discharged, I told the American consul, Captain Jenks being present, that I did not think it right or just to pay me off Sandwich Island prices. The captain said he should not deviate; and therefore I was paid off Sandwich Island prices."

The master testifies as follows: "I told him to come to the United States consul's office two days after that, and I would settle with him. At the time appointed he came there and met me; the consul asked him if it was by mutual consent, and he said yes; he asked him if the bill was all right, read him the amount of it, and asked him if it was right, and he said yes. The consul reckoned up his bills for the voyage, and likewise figured his voyage. I gave him the money, and he paid the man off. He signed his clearance for all dues and demands on the ship at that time. That finished the interview, and I let him go." He also testifies that when Cox received the money he made no objection. made no remarks, did not say any thing, and utterly denies that Cox ever had any conversation with him at the consul's office, or anywhere, upon the subject of an order on the owners, or on the subject of the settlement, or the terms of the settlement. He testifies that he doesn't know that Cox examined or looked at the figures of the consul; that he had nothing to say about it; took his money, and went off. The consul asked him if it was right, and he said it was. The master also admits that he discharged ten or twelve other men during the voyage, and paid them by orders, when they asked for them.

It certainly does not seem probable that a settlement was made in the manner described by the master. It is difficult to believe that the settlement was made on the basis of Honolulu prices. instead of an order on the home port, without any thing being said either to the master or the consul, or by either of them, to the seaman upon the subject of the basis on which the settlement was to be made. The account given by the master is so improbable in itself, that it fails to convince the court that the libellant's statement is not correct, — that he protested against the payment, and only received it because he could get no other settlement.

There is no pretence that his rights were explained to him by the master or the consul, or any offer made to him to give him an order on the owners at the home port. We do not therefore think the settlement was made under such circumstances as would estop the libellant from claiming the balance due him, being the difference between the sum paid him and the pro rata share of his agreed lay at the home prices.

Decree affirmed, with costs. Judgment for libellant, with interest at six per cent.