## THE AMERICAN BEAUTY.

(District Court, W. D. Washington, N. D. January 24, 1924.)

No. 7914.

1. Seamen ⏘6—Fishermen may ship under oral contract for lay.

Rev. St. §§ 4391, 4392 (Comp. St. §§ 8147, 8148) do not prohibit the shipping of fishermen on any terms agreed upon, either orally or in writing, and such contracts are valid and enforceable.

⏘For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**2. Seamen ⊱19—Entitled to damages for breach of oral contract to fish on lay.**
Fishermen who shipped for the fishing season under an oral contract for a lay, and who were wrongfully discharged, are entitled to recover the damages sustained by reason of such discharge, measured by the difference between their share on the lay and their net earnings during the remainder of the season.

In Admiralty. Suit by George Kokich against the gas purse seine fishing boat American Beauty, with John Vila and others as intervening libelants, and Nick Joncich and Nick Masadich as claimants. Decree for libelant, and intervening libelants.

Libelant Kokich and intervening libelants Vila, Vlatkovich and Martinis allege, in substance, that on or about the 28th day of May, 1923, they were engaged by the owners of the American Beauty to serve as seamen on board the said vessel during the fishing season, and were to receive as compensation for their services as fishermen and seamen one-twelfth each of the net proceeds of the vessel's earnings for the season; that as part of such arrangement they entered into the preparation of the vessel and fishing gear for such venture on the 28th of May, 1923, and continued thereon until about the 20th of June, 1923, when the vessel proceeded to the fishing grounds adjacent to Cape Flattery; that on the 9th of July the libelant and interveners were discharged; that the vessel earned during the fishing season a sum which would make each fisherman's share of the earnings $340, and said libelant and interveners pray that they be each awarded such a sum against the vessel. The libelant Skansie Bros. Company claims that it furnished necessary supplies and equipment to the vessel during the season, and that there remains due it the sum of $333.07.

Claimants admit that the libelant and interveners were employed, but deny that the employment was for the fishing season, and allege that the employment was to terminate at will of either party; that on the 9th of July, at the port of Everett, the master, Nick Joncich, on behalf of claimants, discharged the libelant and interveners and tendered to each of them a check for $20.75 for the amount due upon "fisherman's lay," after deducting the items of expense of operation of the vessel to the date of their discharge. The claimants, further answering, say that there is an existing custom among purse seine salmon fishing vessels that such agreements should terminate at will, and allege that after the said vessel had proceeded to the ocean at or near Cape Flattery the libelant and interveners sought to impose upon the will and discretion of the master their own commands, and proposed to fish in a place other than that designated by the master, and that, upon being advised by the master that he (the master) had the selection of the fishing grounds, and that it was the duty of the fishermen to obey his orders, said libelant and interveners mutinied, refused to obey lawful orders, and made threats against the life of the master, and that they hereby forfeited all right to remain on the vessel, and that the vessel thereupon proceeded to the port of Everett, where they were discharged. Claimants admit the amount due to Skansie Bros. Company for supplies and equipment furnished in outfitting the vessel.

John F. Dore and Frank Reagan, both of Seattle, Wash., for libelant and interveners except Skansie Bros. Co.

Bates & Peterson, of Tacoma, Wash., for Skansie Bros. Co.

Winter S. Martin, of Seattle, Wash., for respondent and claimants.

NETERER, District Judge (after stating the facts as above). There is no evidence of mutiny or insubordination on the part of the fishermen and seamen, nor is a custom shown that fishermen on a "lay" may be discharged at will.

⊱For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The master testified that he was on the lookout for fish and in a situation where he could observe; that intervener Vila said, "Why don't you go the other way? There are the fish." Another witness testified that Vila said, "Why don't you turn the boat around?" Another, on behalf of the claimants, testified that Vila said, "Right over here are the fish; where are you going to?" The master testified that the remark of Vila was repeated two or three times, there being a short interval of time elapsing between each remark. The master also testified that he told Vila that as master of the ship he was selecting the fishing grounds and that if Vila did not like that "he knew what he could do"; that thereupon Vila took off his boots and apron, and that he thereafter was taken ashore; that the libelant and interveners stated to the master that he should not leave, and that it was his right (Vila's) to remain; that they talked to him in an angry manner; that he requested the libelant to prepare a statement of the earnings of the vessel, which he declined to do and that he (the master) discharged the libelant and the intervening libelants Vlatkovich and Martinis, Vila leaving of his own volition; that Vila accepted a check for the amount of one-twelfth of the net earnings of the boat to that date.

The intervener Vila denies that he voluntarily left the boat, or that he accepted the check in full for the "fishing lay." Libelant and interveners deny that they talked to the master in an angry or insolent manner, but admit that they did say to him that they thought that Vila, under the circumstances, should not be discharged.

There is no showing that the libelant and interveners were guilty of conduct warranting their discharge. The libelant was not the bookkeeper for the boat; he did not have or receive the statements, or have the custody of the accounts. These were in the possession of the master. The libelant did keep memoranda for himself and the men, but that was not a part of his duty on the venture.

It is in evidence that it is part of a fisherman's duty to look out for and indicate to the master the presence of fish. The evidence shows that at the time of Vila's remarks the vessel was approaching a school of salmon, which were jumping in various directions from the boat, and there is no testimony to warrant the conclusion that any of the fishermen sought to impress their commands upon the master in the navigation of the ship or in the fishing, but were merely discharging a duty imposed in the common venture, the object of which was the capture of fish. I think, from the testimony, that the difficulty arose largely from oversensitiveness on the part of the master, or his autocratic conduct. The school of fish no doubt excited interest in the fishermen. That interest was common, and it would be natural, fish being present in a particular place and six or eight men noting that fact, to call it to the attention of the master. From the testimony the master was not warranted in assuming the belligerent attitude revealed by his own testimony.

While Vila kept the check for $20.75, I am convinced it was not voluntary. He returned to the boat after being landed at Neah Bay and was carried to Everett. From the master's testimony as to what transpired en route to Everett the leaving was not voluntary. Vila

had worked for 30 days assisting in preparing the vessel, seine, and gear for the venture, and had fished about 10 days.

[1, 2] The testimony shows that after they left the boat the libelant and interveners obtained other employment. The claimants assert that if recovery is had, credit must be given for such earnings; that they may not retain the earnings and recover the full value of the share for the season; while libelant and interveners contend that the venture was in the nature of a contract; that they were ready and willing to perform it, and that they are entitled to recover the full value of "the lay"; and cite the Brig Gloucester, 2 Dall. 36, 1 L. Ed. 278, Fed. Cas. No. 7,632; Mahoon v. Glocester, 16 Fed. Cas. 499, No. 8,970; Goodrich et al. v. The Domingo, 10 Fed. Cas. 605, No. 5,543; Jenks v. Cox, 13 Fed. Cas. 537, No. 7,277; The Ianthe, 12 Fed. Cas. 1145, No. 6,992. These cases have no application and are not persuasive to the issue in this case. The right of the seamen-fishermen in this case is founded upon oral contract for a definite period, and all preparatory service had been performed. Nor does the record disclose any applicability of sections 4391 and 4392, Rev. St. (sections 8147 and 8148, Comp. St.). The shipment of fishermen on any terms agreed upon, oral or in writing, is not prohibited. The Cornelia M. Kingsland (D. C.) 25 Fed. 856. There being no statutory provision controlling fishermen who ship without a written agreement, this leaves the parties to the rights accorded by law. The contract was to fish for the season from June 20th to September 5th, and the libelants are entitled to recover the damages which they sustained by reason of discharge by the master. The libelant secured another "lay" and earned the sum of $333, but expended in seeking the employment, in subsistence, and travel, the sum of $81.70; Martinis earned the sum of $500 (no items of expense shown); Vlatkovich earned the sum of $172, with expense items of $90. He claims he expended considerably more, but his testimony is of such character that I am unable to find for a greater amount. Vila earned the sum of $145.80, and incurred expense in travel, keep, and in seeking employment of $76.85.

The items of expense, deducted from the earnings, leave the net earnings, and this sum in each case deducted from $340, the earnings of each share on "lay," is the damage sustained by each. The libelant is entitled to recover $100.95, Vlatkovich, $258, and Vila, $272.05, and Skansie Bros., $333.07, the amount stipulated.