## SOCONY–VACUUM OIL CO., Inc., v. WEST.

## No. 3600.

Court of Civil Appeals of Texas. Beaumont.

Feb. 9, 1940.

Rehearing Denied Feb. 21, 1940.

Lipscomb & Lipscomb, of Beaumont, for appellant.

Elton Cruse, of Beaumont, for appellee.

WALKER, Chief Justice.

This was an action by appellee, Jasper West, against appellant, Socony-Vacuum Oil Company, Inc., for damages for personal injuries. On the testimony of appellee and the verdict of the jury, while in the course of his employment with appellant on the S/S Altair, on the day before Thanksgiving, 1936, he was caused to "slip" down a "stairway" on the ship, and, as a result of his fall, suffered serious bodily injuries. The jury assessed his damages for his injuries at the sum of $3,500 and for "maintenance and care" at the sum of $3,000. From the judgment in appellee's favor for the damages assessed by the jury, appellant has duly prosecuted its appeal to this court.

In defense, appellant plead a written release executed to it by appellee, on a valuable consideration, of all damages suffered by appellee in his petition. By his supplemental petition, appellee plead that appellant's agents induced him to sign the release by representing "that he was only signing a receipt for the time that he was off from work." All questions submitted to the jury on the issue of the execution of the release were found in appellee's favor, and on the verdict of the jury the lower court held that the release was not a bar to judgment in appellee's favor. Appellant's principal point is that, on the undisputed evidence, it was entitled to an instructed verdict, on the theory that the release plead by it constituted a settlement by an accord and satisfaction.

The facts are as follows:

(1) Appellee was 25 years old when he was injured; he quit school in the eighth grade; he was able to read intelligently, demonstrated by reading to the jury when testifying as a witness; his work for appellant was the first work he had done on a ship, and he had been working only a short while when he was injured.

(2) On January 15, 1937, after he was injured, appellee wrote to T. D. Cousins,

one of appellant's representatives, the following letter:

"New York, N. Y.
"January 18, 1937.

"Mr. T. D. Cousins,
"Agent—Socony Vacuum.
"Dear Mr. Cousins:

"I am writing to you now in regards to injury that I had on the 'Altair' on November 25th last. Captain Beck also made and filed a report of same. I was thoroughly examined by Dr. East of Port Arthur a few days after the accident and he told me to take it easy for a while as I had had a bad back and he strapped me all up. This has caused me a lot of pain and lost of work and up to now it still bothers me now and then.

"Dr. English told me that I could report for light duty about two weeks ago and being without funds I joined the 'Ario' Now I wonder Mr. Cousins if you could arrange it for my compensation in this case as I sure know I should be entitled to something and I believe the company will make a just settlement with me the next time I am in Beaumont, that will be around January 28th or 29th.

"I have worked faithfully and hard for this company and expect to keep on doing so without any trouble.

"May I suggest that a settlement of about $150 would be agreeable to me at this time as I believe and know that I shall have to have further treatment and Xrays taken by my Doctor.

"Trusting that I may be able to see you or hear from you on this matter.
"I remain,
"Yours very truly,
"Jasper J. West,
"S/S Ario."

(3) On February 15, 1937, he wrote J. M. Nugent, of appellant's claim department, the following letter:

"Beaumont, Texas,
"February 15, 1937.

"Mr. J. M. Nugent,
"Claim Department.
"Dear Mr. Nugent:

"I have a letter from T. D. Cousins the Agent in Beaumont saying that he had written you about my claim and as I am anxious to get this matter cleaned up, would you be kind enough to let me know what you are going to do. I am still working for the company and I dislike to leave my job in New York to go into your office to collect my claim or perhaps It might be better for me to retain an attorney in the matter.

"Trusting that you will let me hear from you in the matter. My ship will be in Port Socony around February 24th and would appreciate very much in seeing one of your representatives.

"Very truly yours,
"Jasper J. West
"S/S Ario."

(4) On April 10, 1937, he wrote Mr. Nugent, the claim agent, the following letter:

"April 10, 1937.

"Mr. J. M. Nugent:
"Dear Sir:

"In regards of my claim with you. I am sory to say i could'ent get in to see you. this last trip in New York.

"But own the account of getting those Discharge Books. I couldent get in Before your office clouse. But if posible will see you own our next arrival in New York. whitch will Be about April. 19th.

"Yours Truly,
"Jasper West."

(5) On the 19th day of April, 1937, appellee gave to appellant, in its office in New York, the following statement:

"State of New York
"County of New York

"Jasper West being duly sworn deposes and states as follows. I am 25 years of age, reside at Kirbyville Tex. I have been in the employ of the Socony Vacuum Oil Co. for the past 4 months, and at all times hereinafter mentioned was employed as Utility man aboard the S/S Altair.

"On Nov. 11, 1936, I joined the S/S Altair at Beaumont, Texas, and served aboard that vessel in the capacity of utility man until Nov. 29, 1936, at which time I was paid off in Lockport, and sent to the Marine Hospital in Galveston for treatment because of an injury to my back which I sustained on Nov. 25, 1936.

"On Nov. 25, 1936 at about 2.00 P. M. I was engaged in carrying some turkeys that had been prepared for cooking on the following day, to the icebox—from the galley. I was going down the ladder that leads from the steering engine room to the icebox. I had just started down when I suddenly slipped on one of the steps near the top and fell to the bottom of the ladder

landing on the side of it and thus injuring the lower part of my back as I fell.

"I managed to get on my feet again, and as my back hurt me I reported my fall to the Captain who gave me first aid treatment. He dressed the laceration on the lower part of my back and also supplied me with liniment.

"I then endeavored to return to duty and did my work as best I could until two days before arrival at Lockport at which time I had to lay up. Upon arrival at Lockport I was paid off and sent to Dr. English at Beaumont for treatment.

"I remained ashore in Beaumont and reported to Dr. English daily and also at the Public Health Service at Port Arthur where I was treated for my injured back.

"I was finally fit for duty and on Dec. 22, 1936, I joined the S/S Ario, as utility man, and have been aboard that vessel ever since. I was only advanced $10.00 by Mr. Cousins at Beaumont during the time I was ashore. I was treated by Dr. English up to a few days before I joined the S/S Ario.

"The steps on which I slipped and fell were quite steep and as I had my both hands occupied at the time I was unable to use the hand rails when I lost my balance and fell. The steps of the ladder were slightly greasy, due to the fact that some of the engine dept. men use them frequently.

"Jasper West.

"Sworn to before me this 19 day of April, 1937.
"(Seal) R. V. Roland, N. Y. C. #873."

We quote from appellee's testimony the following explanation of the execution of this statement:

"Q. Now, did you sign that statement? A. Yes, sir.

"Q. Now where did you sign it? A. I don't remember.

"Q. Isn't it a fact that you signed that statement in Mr. Roland's office in New York City the very day that you got your money? A. I don't remember.

"Q. What is the date of it? A. 19th day of April, 1937.

"Q. You don't have any recollection about that statement at all? Where did the man get the information which he put in that statement? A. I suppose he got it from me.

"Q. You suppose he did, but don't you know he did, Mr. West? Didn't you give him that statement? Didn't you give him the information from which to make this statement up? A. I don't remember it.

"Q. But you wouldn't deny that you signed it on the day that it purports to have been signed, would you? A. I wouldn't deny I didn't sign it; for that is my signature.

"Q. That's your signature, and you did sign it? A. I don't remember what day.

"Q. But if it appears to be 'Sworn to before me the 19th day of April. R. V. Roland, New York No. 873,' with the notary's seal on it, you wouldn't deny that, would you, Mr. West? A. I don't remember signing it.

"Q. You know that you gave him that information? You know that you gave the man who gave you the order for the money, that you talked long enough to give him this information? A. I sure don't remember it."

(6) On the 19th day of April, 1937, appellee executed to appellant the following release contract:

"General Release

"DO NOT SIGN WITHOUT UNDERSTANDING

"I, Jasper West residing at Kirbyville Texas For and in consideration of the sum of Ninety-one and 66/100 ($91.66) Dollars paid to me by Socony-Vacuum Oil Company, Incorporated, the receipt whereof is hereby acknowledged and other good and valuable considerations, have remised, released and forever discharged, and by these presents do for myself, my heirs, executors and administrators, remise, release and forever discharge the said Socony-Vacuum Oil Company Incorporated, Standard-Vacuum Transportation Company, General Petroleum Corporation of California, Standard Transportation Company, Ltd. their several subsidiary corporations, the S/S Altair their successors and assigns, the several vessels of the said companies, their officers and crews, of and from any and all claims and demands of whatsoever nature and kind, actions, causes of action, suits, sums of money, accounts, reckonings, covenants, contracts, agreements, promises, in law, admiralty, or in equity, which against them or any of them, I ever had, now have or which my heirs, executors or administrators, hereinafter, can, shall or may have for, upon or by reason of any matter, cause or thing

whatsoever, howsoever and whensoever arising; and particularly, but without limiting the generality of the foregoing, for all losses, illness, injuries or damages, wages, maintenance and cure arising from any injuries and/or illness, known or unknown to me, and alleged sustained and/or contracted while employed as Utilityman aboard the S/S Altair from 11/11/36 to 11/29/36, which claim is disputed both as to liability and amount of damage and said payment is not an admission of liability by the aforesaid Companies or any of them and in full settlement and satisfaction of any and all other claims and demands arising from my service on said S/S Altair howsoever arising.

"This Release Contains All the Agreements between the Parties.

"In witness whereof, I have hereunto set my hand and affixed my seal the 19th day of April in the year one thousand nine hundred and thirty seven

"Jasper West (L.S.)

"Signed and delivered in the presence of

This is a general release and is in full and complete settlement.

Jasper West

"R. V. Roland.
"James J. Walsh
"State of New York ⎰ ss.
"County of New York ⎱

"On the 19 day of April 1937, before me personally appeared Jasper West to me known, and known to me to be the person described in and who executed the within instrument and he acknowledged to me that he executed the same.

"R. V. Roland,

"N. Y. C. #873 Notary Public

"This release was read by him and signed by the said Jasper West on the 19 day of April 1937.

"R. V. Roland
"James J. Walsh."

The words at the end of the contract, "This is a general release and is in full and complete settlement," were written by appellee in his own handwriting. His testimony was that, after executing the release, he wrote these words as a part of the release at the request of appellant's representatives with whom he was making the settlement.

(7) On the 19th day of April, 1937, appellant issued to appellee the following voucher, which appellee presented for payment and which was paid to him; he accepted the money and appropriated it to his own use and benefit.

"Socony-Vacuum Oil Company, Incorporated

"Marine Transportation Department

"Claim Division

"Voucher Number 11888

"Date 4/19/37

"Reference DEL INJ 4465

"Mr. H. O. Sharman,

"Building.

"Dear Sir:—

"Please pay in cash as indicated below

| Pay to | Amount | Charge to—Marine Insurance Reserve Accounts as follows |
|---|---|---|
| Jasper West | $81.66 (Eighty-one and 66/100) | S/S ALTAIR C. S. & I Injury |

"The above is in full settlement of any and/or all claims arising out of injuries alleged sustained while employed as Utilityman aboard the S/S Altair on or about 11/25/36.

"Paid without prejudice to our rights

"RVS:AG

Received payment,
"Jasper West"

Explaining the cashing of the voucher, appellee testified:

"Q. You remember getting the money, Mr. West? A. Yes, sir.

"Q. How did you get the money? A. They gave me a slip and I had to go up to some other office.

"Q. Wasn't it a piece of paper as large as this? A. I don't remember. I didn't pay that much attention to it.

"Q. What was it? Wasn't it an order on somebody or a draft? A. Something on that order, yes, sir.

"Q. And you took that to another place in the building and got your money? A. Yes, sir.

"Q. These men were working on the first floor of the building weren't they? A. I don't remember.

"Q. But you did go into the elevator and go up to the cashier's office and get your money and surrender your receipt? A. Yes, sir.

"Q. That was another document, not the release, but the slip that you surrendered to the man when he paid the money over to you? A. Yes, sir, I gave him that.

"Q. And he gave you the cash and you put it in your pocket and walked out of the office? A. Yes, sir."

(8) In rebuttal to appellant's testimony on the issue of release, appellee testified, in support of his plea, that he signed the release believing that it was simply a receipt for his wages and for expenses incurred by him; that appellant's representatives so stated to him; that he did not read the release but could have read it and that no one kept him from reading it; that appellant's representatives read it to him but did not read it as it was written; that appellant's representative Mr. Cousins advised him while he was on the ship to go to appellant's office in New York for a settlement for his wages and expenses; that he would not have signed the release except that he believed it was for wages and expenses, and he would not have signed it if he had known it was in full settlement of his claim. As stated above, appellee admitted on the witness stand that he wrote the letters and executed the release, all as indicated above, in the form and manner as above stated.

 The release and the voucher prima facie constituted an accord and satisfaction of the claim asserted by appellee against appellant. These instruments could be set aside only by an affirmative showing by appellee that they were executed by him through fraud, accident or mistake. Neither the pleadings nor the evidence raised the issues of mistake and accident. While appellee plead the issue of "fraud" by which he was induced to execute the release and to accept and cash the voucher, it is our conclusion that the evidence did not raise this issue in his favor. On his own statement, he was anxious for a settlement of his claim against appellant. He had written to appellant, offering to accept $150. He had an opportunity to read the release and was able to read it. During his negotiations with appellant's agents, he gave them a detailed history of his accident, which he would not have been called for on a mere settlement of wages. With the release in front of him, immediately under his hand, he wrote on it in his own hand writing, "This is a general release and is in full and complete settlement." The release itself in capital letters advised him, "Do Not Sign Without Understanding." The draft which he accepted on the execution of the release carried on its face this statement: "The above is in full settlement of any and/or all claims arising out of injuries alleged sustained while employed as Utilityman aboard the S/S Altair on or about 11/25/36." On his own statement, he knew that the draft was payable to him—so testified; he testified to facts in relation to the draft that he could have known only by reading it. It is clear to our minds beyond reasonable doubt that appellee with knowledge of their contents, purposes, and consideration, executed the release, and accepted and cashed the voucher, in full discharge of all claims he had against appellant. The facts of this case are controlled by Texas & P. Ry. Co. v. Poe, 131 Tex. 337, 115 S. W.2d 591, an opinion by our Supreme Court by Judge Sharp. Also see The Adonis, 3 Cir., 38 F.2d 743; Goodson v. Texas & P. Ry. Co., Tex.Civ.App., 34 S.W.2d 348; Panhandle & Santa Fe Ry. Co. v. O'Neal, Tex.Civ.App., 119 S.W.2d 1077.

It follows that the judgment of the lower court must be reversed and judgment here rendered for appellant, and it is accordingly so ordered.

Reversed and rendered.