DeSHAZO v. WOOL GROWERS CENTRAL STORAGE CO. et al.

No. 9035.

Court of Civil Appeals of Texas. Austin.

June 18, 1941.

Rehearing Denied July 9, 1941.

T. R. Johnston and J. D. Burns, both of San Angelo, for appellant.

Collins, Jackson & Snodgrass, of San Angelo, for appellee.

BLAIR, Justice.

Suit by appellant, H. C. DeShazo, against appellees, Wool Growers Central Storage Company and the Central National Bank of San Angelo, to recover damages for the alleged wrongful conversion of 2,347 pounds of wool. At the conclusion of the evidence the trial court instructed a verdict, and rendered judgment for appellees; hence this appeal.

In May, 1939, appellant stored the wool with appellee storage company; and thereafter on June 6, 1939, executed his note for $325.35 to appellee bank, payable on or before April 6, 1940, and pledged the warehouse receipt as security for the loan, the parties acting under the provisions and terms of the Federal Agricultural Adjustment Act, 7 U.S.C.A. § 601 et seq. All transactions were handled by W. E. Kinney as the agent of each or both of the appellees, and in furtherance of their respective business. Thereafter, on September 1, 1939, appellee storage company sold the wool and delivered it to a purchaser in Boston, Massachusetts, paid with the proceeds of the sale the note of appellant to appellee bank, together with interest due thereon, obtained the note and pledged warehouse receipt securing it, deducted its sale charges, and then mailed all of these instruments with an accounting of its sale of the wool to appellant, enclosing its check for $116.88 as the balance due appellant on the transaction, which check appellant cashed.

Appellant alleged and offered proof tending to show that he stored the wool for the purpose of securing a warehouse receipt thereon so as to obtain a loan secured thereby, under the provisions of the Federal Adjustment Act, and so that he might hold the wool for better prices until the maturity of the note, or until such time as he authorized the sale of the wool; but that without his knowledge or consent each

or both of the appellees, on or about September 1, 1939, sold the wool and delivered it beyond the reach of appellant, in Boston, Massachusetts. That upon receipt of notice of such sale or conversion on or about September 14, 1939, he made demand on appellees and each of them to return the wool and to restore his lien and transaction; but that appellees and each of them refused his demand, advising him that his wool had been sold under authority given by him to appellee storage company. Appellant alleged that the wool was of fluctuating value, and sought as actual damages the highest intermediate value of the wool from September 1, 1939, to the date of the suit or trial, which was alleged to be 45¢ per pound, but which the proof showed to be about 40¢. Appellant further alleged in substance that appellees were entitled to credit on his claim, the entire amount of which appellees had accounted to him, including the sum paid on the note, the charges of appellees and the check for $116.88 cashed by him.

Appellees answered by general denial, and specially alleged that with full knowledge of all the facts and circumstances appellant ratified and confirmed the sale of the wool by the storage company by accepting the benefits, and by receiving and cashing the check of the storage company which accompanied the full account sales rendered by it, purporting to be the full amount due in the premises.

Conceding that the facts raised the issue of conversion of the wool, we agree with the trial court that the undisputed evidence showed that the acts of appellant in connection with the transaction and the cashing of the check representing the balance of the proceeds, conclusively barred any recovery by him either because he ratified the claim of appellees that they acted as commission merchants or factors, or because such acts amounted to an accord and satisfaction of appellant's claim under the well established rule that the payment and acceptance of a lesser amount than is claimed by a creditor constitutes a good accord and satisfaction of the whole claim where it is unliquidated or in dispute, even though the creditor was not bound to make any reduction in his claim, or the amount paid is no more than the debtor concedes to be due. The whole claim of appellant for damages for conversion of the wool was disputed, and the amount of his damages for conversion of the wool was unliquidated and in dispute.

On the issue of ratification or accord and satisfaction, appellant testified that upon receipt of the sales account and check he went to the office of appellee storage company and also the office of appellee bank, and as to the several transactions and conversations which took place testified as follows:

"Q. Mr. DeShazo, when did you go back to the wool house after that? A. I went twice that same day; as soon as I got the letter and then talked to different parties and that evening went back again. I tried to give them the check back and told them I would not take that price for the wool. They said there was nothing they could do about it, that it had already been shipped to Boston. I told them I wanted my wool back and would not accept that kind of price for it. * * *

"Q. Did they state they would replace your wool? A. No sir.

"Q. What did they tell you they would do in connection with the wool? A. They never did say they would do anything; they said they had sold it and had a right to sell it because they were a commission house and not a storage house. I told them they were supposed to keep Government wool there and they said they had sold it before that way. I told them that was what I got the loan for; that if I was intending to sell it I would not have gotten the loan.

"Q. Did you go over there any more after that? A. Yes, late that afternoon after I had talked to several parties in town.

"Q. What did you tell them then? A. About the same; that I didn't want to sell my wool and would not accept that and tried to give them my check again. I shoved it through on the desk and they shoved it back. * * *

"Q. Did you go back any more after that? A. Yes, I believe the next day.

"Q. What did you say to them then? A. I asked them what they were going to do about it. * * * Mr. Kinney said there was nothing they could do about it, that it had already happened and that it could not be recalled.

"Q. Did you go back any more after that? A. Yes, one time after that.

"Q. What was the occasion of going over there that time. A. I got Mr. Curtsinger and we went over there and talked to them. They said there was nothing they could do about it; that they were a commission house and had a right to sell it."

Appellant further testified that after all these transactions and upon the advice of Mr. Curtsinger, an attorney, he cashed the check for $116.88, Mr. Curtsinger stating that "it was too big a check to carry around and to cash it and sue for the balance."

No claim is made that appellee storage company did not fully account to appellant for the sales price of the wool as of the date it was sold, nor that it did not obtain a fair price for it, but as above stated the only dispute in the case was whether appellees sold the wool without authority to do so. If so, appellant's damages for the conversion is measured by the highest price for which it could have been sold between the date it was sold by appellees and the date of the filing of this suit, or possibly the date of the trial under certain conditions. 42 Tex.Jur., 575, § 58, and cases there cited. If appellees had the authority to sell the wool as claimed by them, then they owed appellant nothing, because as commission merchants or factors they admittedly accounted to appellant. Thus the contention of the respective parties arises out of the same transaction, the ultimate question for determination being whether appellees owed appellant the amount for which they accounted to him, which was undisputed, or whether they owed him an amount of unliquidated damages for conversion of his wool, measured by the highest price of the wool between the dates stated. And with full knowledge of all of these facts and circumstances appellant accepted and cashed the check purporting to be the balance due him by appellees on the wool transaction. These facts bring the instant case clearly within the rule stated in 1 Corpus Juris Secundum, Accord and Satisfaction, p. 512, § 32, a, as follows:

"The payment and acceptance of a lesser amount than is claimed by a creditor may constitute a good accord and satisfaction of the whole claim, where it is unliquidated or in dispute, even though the creditor was not bound to make any reduction in his claim, or the amount paid is no more than the debtor concedes to be due."

This same authority at the same page states that: "* * * the settlement of the dispute or liquidation of what has previously been uncertain itself affords sufficient consideration for an accord and satisfaction * * *."

Our courts hold that the doctrine of accord and satisfaction "is particularly applicable to claims arising from the commission of a tort," which claims are generally of an unliquidated nature and are almost invariably disputed, not only as to amount but also as to liability; and they universally hold that such claims form a perfect subject matter for settlement by accord and satisfaction. 1 Tex.Jur. 248; Texas & P. Ry. Co. v. Poe, 131 Tex. 337; 115 S.W.2d 591. And under our court decisions we are of the view that with the check in his hand appellant was put to an election either to tender it back to the appellee storage company, or refuse to approve the sale of the wool and to sue for its conversion; and particularly so since he knew that appellee storage company claimed that it had been issued in full satisfaction of all amounts due him under the wool transaction, and that his acceptance of the check and cashing it ratified the transaction as made by appellees and constituted a valid accord and satisfaction of his claim for unliquidated damages for conversion arising out of the transaction. Socony-Vacuum Oil Co., Inc., v. West, Tex. Civ.App., 137 S.W.2d 108; The Adonis, 3 Cir., 38 F.2d 743; Goodson v. Texas & P. Ry. Co., Tex.Civ.App., 34 S.W.2d 348; Panhandle & Santa Fe Ry. Co. v. O'Neal, Tex.Civ.App., 119 S.W.2d 1077.

An analogous case on principle is Great Western Co. v. Malouf, Tex.Civ.App., 105 S.W.2d 262, 263, relating to a disagreement as to the balance due on account, and where a check was given and cashed containing the notation, "this check to balance our account to date"; the court holding as follows:

"Although appellant protested after it had received and cashed the check, and insisted that it had not been accepted in full settlement, does not change the rule. Even if the check had been for a less sum than was claimed to be due, where it is marked as in full payment, there is an accord and satisfaction. First State Bank of Panhandle v. Knapp (Tex.Civ.App.) 3 S.W. (2d) 468; Kean v. Southwest National Bank of Dallas (Tex.Civ.App.) 50 S.W. (2d) 839."

The judgment of the trial court is affirmed.