## THE MONTAGUE.

### No. 14427.

District Court, W. D. Washington, N. D.

Dec. 1, 1943.

Houghton, Cluck & Coughlin, and Edward E. Henry, all of Seattle, Wash., for libelant.

Charles A. Turner, of Everett, Wash., for respondents.

BOWEN, District Judge.

Libelant was hired for the 1942 salmon fishing season as a fisherman member of the crew of the Purse Seiner "Montague" and was to receive as wages a one-twelfth share of the season's fish catch. From June 23 to July 6 he worked on or about the vessel, mending the fish seine and assisting in the vessel's outfitting. After libelant had been fishing for about 17 days and on July 23, 1942, while he was engaged in the vessel's fishing operations in Georgia Strait off Point Roberts and was working in a skiff from the fishing vessel and while he was leaning over the side of the skiff assisting in changing the location of the seine, the skiff was thrown by a sea wave against the vessel and the side of the skiff struck libelant's head and mashed his head between the side of the skiff and the side of the vessel, resulting in injuries to libelant which necessitated his going to the hospital for 17 days and quitting his service to the vessel for the remainder of the fishing season.

On September 11, 1942, he went to the home of respondent owner of the vessel who then paid libelant $225, for which libelant signed a form of receipt and release reciting "payment in full." Thereafter on February 5, 1943, he filed the libel in this case against the vessel and her owner, Walter Leese, to recover libelant's full share of the entire season's fish catch and the reasonable cost of his maintenance and cure. The respondents answered, alleging full payment of all libelant's claims and setting up the $225 receipt and release as an accord and satisfaction of all liability.

The decision in this case depends upon whether or not such release was a valid one. Its validity is said by respondents to depend upon the general law relating to

receipt and release contracts generally, and a leading state case from Texas (Socony-Vacuum Oil Co. v. West, Tex.Civ.App., 137 S.W.2d 108) is cited by respondents as upholding the release here as a valid accord and satisfaction. Libelant contends he, while working as a fisherman, was a seaman and bases his claims for wages until the end of the fishing season for which he was hired and for maintenance and cure upon well known features of the admiralty law specially favoring seamen in their relationships with their employers.

That this is an admiralty case needs no citation of authority because it involves libelant's wages as a member of the fishing vessel's crew and also his rights of maintenance and cure incident to his personal injuries sustained on navigable waters while he was in the fishing service of the vessel for which he was hired. In such an admiralty case involving as it does libelant's rights under the admiralty law, the decision of this court must be governed by the applicable decisions of the United States Supreme Court and other federal courts to the exclusion of contrary state court decision.

Specifically respondents contend that, even if the court should be of opinion that the release in question was not an accord and satisfaction, still the libelant, a fisherman, was not a "seaman" in such sense as to entitle him to his wages for the remainder of the fishing season after he was injured and to his maintenance and cure under the admiralty rule giving to merchant seamen who become sick or are injured in the service of the ship their wages to the end of their contract of employment and the cost of their cure and their maintenance while sick or disabled.

But Judge Neterer for this court in The American Beauty, 295 F. 513, 514, held that, where fishermen are employed on a share of the fish catch basis for the fishing season, such employment contracts will be protected in the admiralty court against wrongful repudiation by the master before the end of the fishing season. And in Mason v. Evanisevich, 9 Cir., 131 F.2d 858, 859, where a member of the crew of a sardine fishing vessel, hired for the sardine fishing season, was injured in the home port on the first day he worked and thereafter had to discontinue his service to the vessel and did not by reason of his injury perform any of his remaining part of the employment contract, the Circuit Court of Appeals for this Circuit said: "We hold that the appellee (the fisherman) was entitled to the share, undisputed in amount, which the (trial) court awarded him for the catch of the entire season."

Other federal courts have held that fishermen employed upon a share of the fish catch basis are seamen and, except as their rights are modified by their peculiar contracts, are protected by law as other seamen are (The Carrier Dove, 1 Cir., 97 F. 111), and that fishermen may proceed for their wages in admiralty against the vessel and her owner, like other seamen. The Minna, D.C., 11 F. 759; The Virginia Belle, D.C., 204 F. 692; Doyle v. Wilkisson, D.C., 1932 A.M.C. 1468. And in a comprehensive note at pages 760, 761 of the report of The Minna, supra, are cited other authorities to the point that "all persons employed on a vessel to assist in the main purpose of the voyage are mariners, and are included under the name of seamen (citations omitted) and have a lien for their wages (The Ocean Spray, [Fed.Cas. No. 10,412], 4 Sawy. 105). See, also, The Sea Lark, D.C., W.D.Wash., 14 F.2d 201, 1926 A.M.C. 1084.

If the wage rights and remedies of seamen under the admiralty law are to be accorded fishermen in harmony with the foregoing authorities, I see no reason for denying to fishermen the rights of wages for the entire term of their contract (which usually is and in this case was for the fishing season) and maintenance and cure which are allowed by admiralty courts to other seamen. The policy of safeguarding such rights to seamen doubtless had its origin in the humane necessity of protecting merchant seamen stranded or disabled in a foreign port, but the application of the policy has not been confined to seaman stranding or disablement in foreign ports. It is applied also to disability and non-payment of full contract wages occurring in the home port. Mason v. Evanisevich, supra.

This court, therefore, holds that a fisherman member of the crew of a vessel engaged in the business of commercial fishing in navigable waters is a seaman in such sense as to entitle him, when he becomes sick or is injured in the service of the vessel, to his wages for the duration of his employment contract and to the reasonable cost of his maintenance while disabled and to the reasonable cost of his cure, and that such rights may be enforced in a court of admiralty, wherein will be accorded to such a fisherman in respect to such rights the

same solicitous protection ordinarily given by the admiralty to seamen whose primary duty is to "hand, reef and steer" or otherwise assist in the navigation and work of vessels engaged in commercial maritime shipping and trade. It was as to wages so held in Mason v. Evanisevich, supra, and in The American Beauty, supra. In effect it was as to maintenance and cure so held in Cresci v. Standard Fisheries, D.C.Cal., 7 F.2d 378; Cox v. Westerbeke, D.C.Mass., 1935 A.M.C. 508; and Doyle v. Wilkisson, D.C.Mass., 1932 A.M.C. 1468. Likewise in an action at law the allowance of maintenance and cure to a fisherman has been approved by a federal court. Nolan v. General Seafoods Corp., 1 Cir., 112 F.2d 515. Such rights of fishermen seamen to wages, maintenance and cure may be enforced against the vessel and her owner, for both are liable. The Osceola, 189 U.S. 158, 175, 23 S.Ct. 483, 47 L.Ed. 760; The New York, 2 Cir., 204 F. 764, 765; The Carrier Dove, 1 Cir., 97 F. 111; Doyle v. Wilkisson, D.C. Mass., 1932 A.M.C. 1468; 1 Benedict, Admiralty (6th Ed.), 253. See, also, 1 Benedict, Admiralty (6th Ed.), 249, Sec. 81.

We come now to the question of the validity of the release in this case as an accord and satisfaction. The most recent case on that question in the United States Supreme Court, to which this court's attention has been called, is Garrett v. Moore-McCormack Co., 317 U.S. 239, 63 S.Ct. 246, decided about a year ago. The special protection by admiralty courts of the rights of seamen as wards of the court was emphasized in that case, and after quoting from the authoritative case of Harden v. Gordon, Fed.Cas.No. 6,047, decided by Justice Story more than a hundred years ago, the Supreme Court in the Garrett case, supra, 317 U.S. at page 248, 63 S.Ct. at page 252, said: "We hold, therefore, that the burden is upon one who sets up a seaman's release to show that it was executed freely, without deception or coercion, and that it was made by the seaman with full understanding of his rights. The adequacy of the consideration and the nature of the medical and legal advice available to the seaman at the time of signing the release are relevant to an appraisal of this understanding."

That quoted language of the Supreme Court correctly states the controlling principle applicable to the situation here.

The release here relied upon to acquit the respondents of any further liability or responsibility after payment by them of the $225 does not expressly state in its terms what items were paid for in full, and respondents would have to go outside the release for evidence to establish what those items were. In view of that, have respondents who rely upon this seamen's release sustained the burden placed upon them by the Garrett case, supra, to show that the $225 payment was in fact intended as full payment and that the release was executed freely, without deception or coercion and with a full understanding by the seaman of his rights?

It appears from this release that all parts of it were not written with the same ink or that different parts of it were written at different times. I cannot certainly say from an inspection of the writing itself that the words "paid in full" were written in ink different from the ink used in the signature of Mr. Strom and in writing the other words in the release. The words "received from Walter Leese Two Hundred Twenty Five Dollars ($225.00)" appear more likely to have been written at a time different from the time of writing the words "paid in full". That does not mean, however, that I am convinced that the words "paid in full" were written in after Mr. Strom signed the release. It is possible that the release was written up in part some time before Mr. Strom signed it and that on the occasion of his signing it, and before he signed it, the words "paid in full" were written in. In any event, respondents have not explained, when possibly it was within their power to explain, the different appearance of the ink in some of the words from the appearance of the ink in other words of the release. I think respondents should have explained that situation as a part of their obligation to carry forward the burden of establishing the validity of this release, but they did not do so.

Respondents' contention that all of their obligations to libelant were fully paid and discharged by the $225 payment is not strengthened by direct evidence of the actual intention of the parties on that point. The testimony as to exactly what was said by the parties when the $225 payment was made discloses no clear statement on that occasion by either party showing or tending to show, any more than the written words of the release

("paid in full") themselves show, that either libelant or respondent Leese specifically intended the $225 payment to satisfy and discharge any particular obligation. There is, however, some testimony to the effect that libelant said he was or seemed to be satisfied, but this line of testimony also fails to supply the most needed particular, namely, what specific item or items were intended to be paid and satisfied by the $225 payment?

Libelant's share in the season's fish catch was established by the evidence in the sum of $1,556.76. When to that is added the cost of his maintenance and cure, there results a total sum owing from respondents to libelant which is obviously too great to admit of any reasonable inference from the mere fact of the $225 payment that full payment of all items for wages and maintenance and cure was intended by the parties to be accomplished by that payment of only $225, and respondents' contention of full payment does not have the support of any such inference. On the contrary, it may be a significant circumstance favoring libelant's denial of full payment that the amount paid was more nearly analogous to the total amount of hospital, doctors and medical bills, and cost of maintenance, than to the amount of libelant's share in the season's fish catch.

There is then, to support respondents' contention of full payment, neither evidence nor inference from evidence other than the release, which of itself throws no light on what items specifically were intended to be paid in full. When you take the release and read it, it is just as reasonable to contend from it alone that libelant intended to receipt for full payment of only some one of the items involved, like the hospital and medical expenses, as to contend that he intended to accept the $225 as full payment of all of his share in the season's fish catch and also as payment for his maintenance and cure. One of such contentions so far as the words in the release are concerned is just as reasonable as the other. It may be concluded that the release does not of itself operate as a discharge of respondents' liability to pay libelant in full for his share of the fish catch and for maintenance and cure, because it does not clearly purport to do so. But whether that conclusion is correct or not, the release is ineffective and invalid as an accord and satisfaction, because, contrary to the Garrett case rule, it is not sufficiently shown (1) that libelant fully understood at the time of signing the release what items he was being paid for or what the full extent of his rights was with respect to the several amounts due him, nor (2) that, being so advised, he specifically intended to accept the $225 in full payment and satisfaction of all such sums due him.

The court is, therefore, of the opinion and decides that respondents, notwithstanding the release, are still liable to libelant for his full share of the season's fish catch and for the reasonable cost of his maintenance and cure, less the $225 already paid. Libelant has expressly waived all right to share in the second or fall installment of the season's fish catch, and for that reason no recovery will be allowed for that.

The only thing that remains is for the court to determine the correct several amounts or items to which the libelant is entitled. As to the cost of libelant's cure, the proof as to the amount and reasonableness of the claims for the hospital, doctors and medical expenses is undisputed that the total of all those items is the sum of $189.24, consisting of $79.71 for the Royal Columbian Hospital bill, $26.53 for the cost of bifocles and occluder, $75 for Dr. Lawson's doctor bill incurred while libelant was at the Royal Columbian Hospital in New Westminster, B. C., $6 for the doctor's bill of Dr. Hasler at Everett, and $2 for the bill of Dr. Secoy of the Everett Clinic. So that with respect to the items for cure the court finds that the total sum of $189.24 is a fair and reasonable total allowance which respondents should pay to libelant.

As to maintenance, the evidence is much less certain. There is some evidence that libelant was disabled not only during August and September but that he had not fully recovered during the months of October and November. But I think in view of his activities while on the October hunting trip, cutting wood, making alterations on his house, driving his car (the first time when on Sept. 11th he went to respondent Leese's home), and his other activities, that he should be allowed maintenance for only 30 days from August 10, when he left the hospital, to September 10, 1942, at $1.50 per day, which amounts to the sum of $45, which sum the court finds is a fair and reasonable

sum to be allowed libelant for maintenance.

For wages (½₂ share in season's fish catch), the court allows the net sum of $1,331.76 which is arrived at by deducting the amount paid (which was $225) from his full share of $1,556.76, the latter being the same amount allowed to each of the other members of the crew.

Altogether the total net amount so allowed by the court to the libelant from respondents for all claims in this case is the sum of $1,566. Findings of fact, conclusions of law and decree may be settled at a time to be agreed upon by counsel. Libelant's taxable costs also will be allowed.

Exceptions allowed respondents.

This decision will take the place of the court's oral decision announced from the bench on December 1, 1943, as of which time this decision will be filed.